# United States Court of Appeals
## For the First Circuit

No. 08-1407

UNITED STATES OF AMERICA,

Appellee,

v.

RONALD PENA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Boudin, Stahl, and Lipez, Circuit Judges.

Mary A. Davis, by Appointment of the Court, with whom Tisdale & Davis, P.A., was on brief for appellant.
Mark T. Quinlivan, Assistant U.S. Attorney, with whom Michael K. Loucks, Acting United States Attorney, was on brief for appellee.

November 17, 2009

**STAHL**, <u>Circuit Judge</u>.  Defendant-Appellant Ronald Pena appeals both his conviction and sentence for possession of cocaine base with intent to distribute and carrying a firearm during and in relation to a drug trafficking crime.  His primary contentions are that his conviction rested on improperly admitted fingerprint evidence and that there was insufficient evidence to convict him of either charge.  After a careful review, we reject Pena's claims and affirm the district court.

## I. Facts and Procedural Background

Because Pena challenges the sufficiency of the evidence brought against him, we recite the facts in the light most favorable to the jury's verdict.  <u>United States</u> v. <u>Garcia-Alvarez</u>, 541 F.3d 8, 11 (1st Cir. 2008) (citing <u>United States</u> v. <u>Vázquez-Botet</u>, 532 F.3d 37, 42-43 (1st Cir. 2008)).  As a result of a phone call placed to the Brockton Police on August 27, 2005 at about 2:00 p.m., officers of the Brockton Police Department were dispatched to the area of North Warren Avenue to look for a particular individual.  Sergeant Kenneth Lofstrom, who was in a marked cruiser, observing Pena walking down the street, pulled up next to Pena and asked if he could speak with him.  Pena responded, "Why? What's up?"  A second marked cruiser pulled up, and as the officer driving that cruiser exited the vehicle, Pena took off running through a vacant lot on North Warren Avenue.  He then ran across

Walnut Street and through a backyard at 18-20 Crowell Street before being apprehended by police and arrested.

Officers then searched for evidence in the area where Pena had been observed running. They found a Sidekick II cell phone as well as a green baseball cap. Pena had been wearing such a cap before fleeing the police. The officers also found a loaded Smith & Wesson Model .357 Magnum revolver lying on the ground in plain view and, a few feet from the firearm, a clear plastic bag with other, smaller clear plastic bags inside of it containing a white substance. A state laboratory analysis later determined that the bags contained a net weight of 43.19 grams of cocaine base.[1]

When Pena was transported to the Brockton Police Department for booking, officers recovered $2,781 in United States currency from his front right pocket. Pena was fingerprinted and advised of his Miranda rights. He subsequently asked the officers if they had found his cell phone, and when Pena was shown the Sidekick II phone, he identified it as his.

On December 7, 2005, the grand jury returned a two-count indictment charging Pena with possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (the "drug charge" or "Count One"); and carrying a firearm during and in relation to a drug trafficking crime, and possession of a firearm

---

[1] At trial, the jury heard testimony that the street value of that amount of cocaine base, packaged in that fashion, would be close to $2,100.

in furtherance of that crime, in violation of 18 U.S.C. § 924(c) (the "firearm charge" or "Count Two").

A ten-day jury trial commenced on May 29, 2007. At a motions hearing prior to opening statements, Pena moved to exclude testimony regarding fingerprint evidence, arguing that it failed to meet the standard for expert testimony under Fed. R. Evid. 702. The district court provisionally denied the motion and allowed three troopers from the Massachusetts State Police trained in fingerprint analysis to testify at trial that they compared a partial latent fingerprint found on the revolver to an inked fingerprint of Pena's left thumb using the ACE-V method (analysis, comparison, evaluation, and verification), and matched the latent fingerprint with the inked fingerprint to the exclusion of all others. Pena renewed his objection to the testimony, and the district court again denied the motion in an oral ruling.

Also, Christina Rosado, a civilian witness residing at 95 North Warren Avenue, testified that on the afternoon of August 27, 2005, she looked out her kitchen window and saw a man run across her backyard, reach into the area of his right hip, and make two separate throwing motions, as if he were throwing something away. Rosado testified that she then observed the man continue to run until he was out of her line of sight.

On June 8, 2007, on the seventh day of trial, Pena moved for judgment of acquittal, asserting that the evidence was

-4-

insufficient to sustain a conviction on either count charged in the indictment. The district court orally denied the motion, and on June 14, 2007, Pena was convicted on both counts of the indictment. Pena filed a post-judgment motion for acquittal on Count Two, and that motion was also denied. On February 26, 2008, the district court sentenced Pena to consecutive terms of imprisonment totaling 120 months as well as four years of supervised release.

## II.

On appeal we consider the following issues: (1) whether the district court erred in admitting the testimony of the Massachusetts State Troopers regarding the fingerprint evidence, and (2) whether the totality of the evidence was sufficient to support the verdict.[2]

## A. Admissibility of Expert Testimony Regarding Fingerprint Evidence

We review Pena's claim that the district court erred in admitting expert testimony regarding fingerprint evidence for abuse of discretion. United States v. Diaz, 300 F.3d 66, 74 (1st Cir. 2002).

Pena challenges the ACE-V method used by the state troopers in matching the partial latent fingerprint recovered from

---

[2] We also briefly consider claims of error which Pena raises in his pro-se Supplemental Brief regarding the court's charging instructions on reasonable doubt and the elements of the offenses as well as the identification of the drug type as crack for purposes of sentencing.

the firearm to Pena's inked fingerprint. Pena claims that the method was not scientific and that the troopers' conclusion that his fingerprint matched the partial latent print was based on no discernible standard. Specifically, Pena argues that the ACE-V method was unreliable because it involved merely a visual comparison of the two prints where the trooper conducting the initial analysis knew that the inked print was taken from a suspect and the trooper made no diagrams, charts, or notes as part of his evaluation. Given our standard of review, we are not persuaded.

Federal Rule of Evidence 702 permits a witness qualified as an expert to offer opinion testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." As the Supreme Court has held, it is the task of the trial judge to ensure that an expert's testimony "both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993). This involves a preliminary assessment of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93. The Court later extended Daubert's application to technical and other specialized knowledge in addition to scientific testimony. See Seahorse Marine Supplies,

Inc. v. Puerto Rico Sun Oil Co., 295 F.3d 68, 81 (1st Cir. 2002) (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999)).

In this case, the district court declined to hold a Daubert hearing and initially denied Pena's motion to exclude the fingerprint evidence. On Day 6 of trial, Massachusetts State Trooper Kevin Halle gave extensive testimony about the ACE-V method, his training and experience using the method for fingerprint identification, and how he used the method in Pena's case. He explained that after he had analyzed the partial latent print, compared it to the prints on Pena's fingerprint card, and determined that it matched Pena's left thumb print, he had two other troopers independently verify his findings. Those two troopers then testified as to their verification of the match.

Though Trooper Halle acknowledged that the Massachusetts State Police used no specific minimum number of points to confirm a fingerprint match, and the district court expressed some reservation about the reliability of the testimony on that basis,[3] the court ultimately decided to admit the testimony, noting that "the case law is overwhelmingly in favor of admitting fingerprint experts under virtually any circumstance." Consequently, the court

---

[3] The court also expressed concern about "the lack of uniform standards, the problem that the proficiency rates, error rates are basically determined without a controlled group" and the fact that "no one has ever tested the premise of uniqueness."

reasoned, the only way it would have considered excluding the testimony or giving a limiting instruction "is if there had been data, real evidence presented about the limitations of fingerprinting." Instead, as the court acknowledged, Pena's motion to exclude relied on "one article from the Fordham Law Review, and that's not enough to carry the weight of the exclusion motion."

The district court did not abuse its discretion. Numerous courts have found expert testimony on fingerprint identification based on the ACE-V method to be sufficiently reliable under Daubert. See United States v. Baines, 573 F.3d 979, 992 (10th Cir. 2009); United States v. Mitchell, 365 F.3d 215, 246 (3d Cir. 2004); United States v. Sullivan, 246 F. Supp. 2d 700, 704 (E.D. Ky. 2003); United States v. Llera Plaza, 188 F. Supp. 2d 549, 575-76 (E.D. Pa. 2002); Commonwealth v. Patterson, 840 N.E.2d 12, 32-33 (Mass. 2005) (finding ACE-V method reliable for single latent fingerprint impressions). Though acknowledging the lack of minimum points and relative subjectivity of certain ACE-V protocols, including that followed by the FBI, courts have nonetheless found that most of the Daubert factors support admitting latent fingerprint identification evidence obtained pursuant to the ACE-V method. See Baines, 573 F.3d at 990-92; Mitchell, 365 F.3d at 241, 246. As this court has stated, against such a backdrop, "it is difficult to discern any abuse of discretion" when the district court decides to admit expert testimony that relies on the ACE-V

method.  <u>United States</u> v. <u>Mahone</u>, 453 F.3d 68, 71 (1st Cir. 2006).

The same holds true in this case.[4]

## B. Sufficiency of the Evidence

We review preserved challenges to sufficiency of the evidence de novo.  <u>United States</u> v. <u>Azubike</u>, 564 F.3d 59, 64 (1st Cir. 2009).  We examine the evidence "both direct and circumstantial, in the light most favorable to the prosecution and decide whether that evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime."  <u>United States</u> v. <u>Cruz-Rodriguez</u>, 541 F.3d 19, 26 (1st Cir. 2008) (citing <u>United States</u> v. <u>Fenton</u>, 367 F.3d 14, 18 (1st Cir. 2004)).

---

[4] Pena also argues that the district court erroneously shifted to him the burden of refuting the reliability of the expert testimony.  Though somewhat vague, Pena's argument appears to be that once the trial judge acknowledged the questionable nature of the evidence, she "abdicated her role" by not holding a <u>Daubert</u> hearing and instead requiring Pena to produce data and experts to demonstrate why the evidence should not be admitted.  This argument also fails.

A district court does not abuse its discretion by dispensing with a <u>Daubert</u> hearing if no novel challenge is raised.  <u>See</u> <u>Mitchell</u>, 365 F.3d at 246.  Here, Pena raised no new favorable case law or expert testimony to challenge the admissibility of the fingerprint identification evidence, instead citing only a single 2002 student note from the Fordham Law Review.

## 1. The Drug Charge[5]

In his pro-se Supplemental Brief, Pena challenges the sufficiency of the evidence as to Count One of the indictment, which charged him with possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1).[6] Pena claims that the testimony of Ms. Rosado was "uncorroborated and unsubstantiated" and that "no other evidence showed that [he] possessed a firearm or any drugs, at any time at all." According to Pena, the only other evidence relied upon by the government was his sudden flight from police. Viewing the evidence in the light most favorable to the prosecution, as we must, we find Pena's argument unavailing.

---

[5] The government argues that Pena waived his sufficiency challenge as to Count One by failing to renew his motion for judgment of acquittal at the close of evidence and by also failing to contest his conviction as to that count in his post-verdict motion. However, a review of the trial transcript indicates that Pena appears to have renewed his motion after both parties rested, so his motion was not waived. Whatever the standard of review, Pena's claim fails as there is more than sufficient evidence to support his conviction.

[6] In addition to challenging the sufficiency of the evidence, Pena appears to raise a separate argument that the police did not have grounds to stop or arrest him. Pena claims that the anonymous tip on which the Brockton Police were acting when they approached him did not exhibit sufficient indicia of reliability under Florida v. J.L., 529 U.S. 266 (2000), and his subsequent actions, namely his flight from the police, did not amount to reasonable suspicion that he was engaged in criminal activity. Pena never made this argument to the district court in a motion to suppress, and it is therefore deemed waived. See United States v. Santos Batista, 239 F.3d 16, 19 (1st Cir. 2001) ("Failure to raise suppression arguments before trial 'shall constitute waiver thereof.'" (quoting Fed. R. Crim. P. 12(f))).

Ms. Rosado testified that on the date and time in question, she observed a man matching Pena's general description[7] run across her backyard, reach into his right hip area, and make two separate throwing motions.  She recounted the same to officers searching the area minutes after the incident.  The officers then found the cell phone, firearm, and plastic bag containing drugs along the flight path.  Pena admitted the phone was his, and a fingerprint match was made as to the firearm.  Based on this evidence, a rational jury could conclude beyond a reasonable doubt that Pena possessed the bag containing cocaine base before discarding it (along with the firearm and cell phone) while fleeing the police.[8]

## 2. The Firearm Charge

Pena also argues that the government did not produce sufficient evidence to support his conviction on Count Two of the indictment, which charged him with violation of 18 U.S.C. § 924(c) ("Section 924(c)").  Title 18 U.S.C. § 924(c)(1)(A) prescribes a

---

[7] Ms. Rosado testified that the man she saw looked to be about twenty years old, with dark skin.  She stated that he was chubby, had black hair in braids, and was wearing black pants and a white short-sleeve shirt.  One of the officers testified that the defendant was wearing a white tee shirt and blue jeans -- a distinction without a difference.

[8] The jury could also easily have concluded that the drugs were intended for distribution.  The jury heard testimony that such a large amount (43.19 grams), packaged in individual sandwich bags and with a street value of over $2,100, would ordinarily be possessed by a dealer rather than an end user.

mandatory minimum sentence for any person who "during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." We focus here on the possession offense.[9] To obtain a conviction, the government must prove that the defendant: 1) committed a drug trafficking crime; 2) knowingly possessed a firearm; and 3) possessed the firearm in furtherance of the drug trafficking crime. United States v. Marin, 523 F.3d 24, 27 (1st Cir. 2008). At oral argument, Pena's counsel conceded that the first two elements of the charge were met: Pena was convicted of a drug trafficking crime, and he was carrying a gun when approached by police.[10] However, Pena challenges the sufficiency of the

_____

[9] Congress added the "possess[ion]" "in furtherance of" language to the statute in 1998 in response to Bailey v. United States, 516 U.S. 137 (1995), where the Supreme Court held that under the prior version of the statute, "the Government must show that the defendant actively employed the firearm during and in relation to the predicate crime." See United States v. Grace, 367 F.3d 29, 34-35 (1st Cir. 2004) (quoting Bailey, 516 U.S. at 150) (emphasis added). The statute also continues to prescribe a violation for the acts of 1) using or 2) carrying a firearm "during and in relation to" a drug trafficking crime. As Pena was charged both with "carry[ing]" a firearm "during and in relation to" the drug offense and "possess[ing]" a firearm "in furtherance of" that offense, the government could have obtained a conviction under either avenue of proof. See United States v. Lott, 310 F.3d 1231, 1246 (10th Cir. 2002). As we find sufficient evidence to support a jury finding that Pena possessed the firearm in furtherance of his possession with intent to distribute cocaine base, we need not address whether the government also proved that he carried a firearm during and in relation to a drug trafficking offense.

[10] In his pro-se Supplemental Brief, Pena states that his counsel's concession on this point contradicted his own position. He states that he "negates any inference whatsoever that suggests

-12-

evidence as to the "in furtherance of" element, arguing that the government never established a link between the gun and the drug trafficking crime.  We reject this claim.

To prove that a defendant possessed a firearm "in furtherance" of the predicate drug crime, the government must show a sufficient nexus between the firearm and the drug crime such that the firearm advances or promotes the drug crime.  Marin, 523 F.3d at 27 (citing Grace, 367 F.3d at 34-35; United States v. Garner, 338 F.3d 78, 81 (1st Cir. 2003)).  The mere presence of a firearm in the area where the drug offense occurred is insufficient. Grace, 367 F.3d at 35.  In assessing whether a sufficient nexus exists, we consider several factors:  whether the firearm was loaded, whether the firearm was easily accessible, the proximity of the firearm to the drugs, and the surrounding circumstances. United States v. Robinson, 473 F.3d 387, 399-400 (1st Cir. 2007) (citing United States v. Carlos Cruz, 352 F.3d 499, 509 (1st Cir. 2003)).

In this case, each of these factors supports a conclusion that Pena possessed the gun "in furtherance of" the drug crime. The .357 Magnum was loaded, and there was circumstantial evidence

he threw the firearm and drugs allegedly recovered on [the day in question]."  Though Pena denies that the firearm recovered by the police was ever in his possession, the fingerprint evidence taken from the firearm, the fact that the gun was found along the flight path, and the testimony of Ms. Rosado were sufficient to allow a reasonable jury to conclude that Pena had, in fact, been in possession of the revolver when initially stopped by police.

that Pena was carrying both it and the drugs on his person.  <u>Cf.</u> <u>Grace</u>, 367 F.3d at 31 (affirming conviction where unloaded gun was kept under a bed in a drawer that was blocked by a duffel bag, trash can, and box of books, no ammunition was in the house, and drugs were stored in a different room than the gun).

In addition to this evidence, the government presented evidence that could lead a rational jury to infer that Pena was carrying the firearm to protect his drugs and drug proceeds, a purpose that we have found establishes the required nexus between the drugs and the firearm.  <u>Grace</u>, 367 F.3d at 35 (citing <u>United States</u> v. <u>Luciano</u>, 329 F.3d 1 (1st Cir. 2003)).  Pena was carrying $2,781 in cash at the time of his arrest, and there was evidence that the drugs he discarded had a street value of $2,100.  The jury also heard evidence that the area where Pena was approached and eventually arrested was a high-crime area in which numerous drug and gun crimes and robberies had taken place.

This evidence was sufficient to convince a rational jury beyond a reasonable doubt that Pena possessed the .357 Magnum "in furtherance of" a drug trafficking crime.

## C. Other Matters

In his pro-se Supplemental Brief, Pena mounts a potpourri of arguments, none of which were raised below.  We thus briefly consider each, reviewing only for plain error.  <u>United States</u> v.

<u>Garcia-Carrasquillo</u>, 483 F.3d 124, 132 (1st Cir. 2007) (citing <u>United States</u> v. <u>Carvell</u>, 74 F.3d 8, 14 (1st Cir. 1996)).

First, Pena argues that the court's instruction on reasonable doubt confused jurors and allowed the jury to return a conviction based on a finding that Pena was "<u>probably</u> guilty" rather than guilty beyond a reasonable doubt. Pena cites only a small portion of the court's reasonable doubt instruction, which comprises over two pages of the trial transcript. In viewing the instruction as a whole, we find that it did not mislead the jury as to the government's burden of proof. The instruction made it eminently clear that the jury had to find Pena guilty beyond a reasonable doubt.

Pena also contends that the court erroneously instructed the jury with regard to the term "use," citing <u>Bailey</u> v. <u>United States</u>, 516 U.S. 137 (1995), for the proposition that "<u>use</u> for purposes of a § 924(c) violation means to actively <u>deploy</u> or <u>discharge</u> and not mere possession or presence." (emphasis in pro-se Supplemental Brief). Pena suggests that by employing the term "use," the court constructively amended the indictment because the indictment did not charge Pena with "use" of a firearm.

While the court did, in fact, use the term "use" once in the context of its instruction on the "in furtherance of" element, "use" of a firearm was not an issue in this case, and in any event the court's use of that term did not prejudice Pena. There was

-15-

ample evidence that Pena possessed a firearm in furtherance of the drug crime, and even if the jury thought it had to find "use," that would have been a benefit not a detriment to Pena.[11]

Finally, Pena argues that he was improperly sentenced as a crack offender, attempting to draw a distinction between the terms "crack" and "cocaine base," which were used somewhat interchangeably by the court and the government at trial and sentencing.  However, for the purpose of the statute under which Pena was sentenced, 21 U.S.C. § 841(b)(1)(B)(iii),[12] the distinction

---

[11] Pena raises numerous additional challenges to the court's instructions as to each count, each of which is without merit. With regard to Count One, possession with intent to distribute, Pena contends that the district court defined "to possess" without defining "to distribute" or "trafficking."  It is unclear how the definition of trafficking is relevant to the elements of Count One, and the court did define the term "to distribute."  Pena next argues that the court constructively amended the indictment by using the term "crack" in the verdict slip when the indictment charged him with possession with intent to distribute "cocaine base."  Pena's claim is incorrect because the verdict slip in fact uses the term "cocaine base," not "crack."

Additionally, Pena contends that the court gave the jury contradictory instructions as to whether or not the government was required to prove what type of drug was possessed.  Here, too, Pena is incorrect.  The court specifically instructed the jury that the government must prove beyond a reasonable doubt that the substance actually possessed was cocaine base.

Regarding Count Two, Pena argues that the court failed to explain the first element of the Section 924(c) offense and to define the term "trafficking" within that element.  Again, Pena's claim is without foundation.  The court did, in fact, explain that the first element of Count Two was that Pena committed a drug trafficking offense and further instructed that the crime of possessing cocaine base with intent to distribute charged in Count One was a "drug trafficking crime" for the purpose of the statute.

[12] Though the district court did not note the statute or its terms on the record at sentencing, the indictment specifically

-16-

between crack and cocaine base is meaningless. Unlike the Sentencing Guidelines, 21 U.S.C. § 841(b) does not define "cocaine base," and we have held that the term, as used in the statute, includes <u>all</u> forms of cocaine base, including but not limited to crack. <u>United States</u> v. <u>Richardson</u>, 225 F.3d 46, 49 (1st Cir. 2000) (citing <u>United States</u> v. <u>Lopez-Gil</u>, 965 F.2d 1124, 1134 (1st Cir. 1992) (opinion on panel rehearing)). Consequently, regardless of whether the government proved that Pena possessed 43.19 grams of crack or 43.19 grams of some other form of cocaine base, his sentence under the statute would have been the same. As Pena admits that the government presented "ample evidence" that the substance attributed to him was cocaine base, the court clearly did not commit plain error in sentencing him to the mandatory minimum prescribed by the statute.

## III.

For the reasons stated above, we affirm Pena's conviction and sentence.

**<u>Affirmed.</u>**

---

charged Pena with a violation of 21 U.S.C. § 841(b)(1)(B)(iii), possession with intent to distribute "5 grams or more of a mixture or substance . . . which contains cocaine base."