[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 16, 2010
JOHN LEY
CLERK

_____

No. 09-16457
Non-Argument Calendar

_____

D. C. Docket No. 08-00495-CR-2-CAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VARIAN SCOTT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 16, 2010)

Before EDMONDSON, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Varian Scott appeals his convictions and sentences for conspiracy to commit health care fraud and 20 counts of health care fraud. On appeal, Scott argues that the district court violated his Sixth Amendment right to confrontation when it allowed the government to introduce a CD of Medicaid claims data without affording him an opportunity to cross-examine the employee who prepared the CD. He also asserts that he was deprived of a fair trial because the district court admitted unreliable expert testimony concerning fingerprint examination. Finally, he contends that his sentences are substantively unreasonable because the district court did not give sufficient weight to the need to avoid unwarranted disparities between his sentences and the sentences given to his co-conspirators. For the reasons set forth below, we affirm Scott's convictions and sentences.

I.

Scott was charged in a superseding indictment with 1 count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, and 20 counts of health care fraud, in violation of 18 U.S.C. §§ 1347 and 2. Prior to trial, Scott filed a motion *in limine* to exclude the testimony of a government fingerprint expert, Jessica LeCroy. He argued that fingerprint examination is too unreliable to be admissible under Fed.R.Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The district court

took Scott's motion under advisement.

The government's chief witness at trial was a cooperating codefendant, Hezron Collie. Collie explained that he and Scott entered into a plan to forge prescriptions for HIV and cancer medications, fill those prescriptions using Medicaid numbers belonging to others, and sell the medications to another source for a profit. Collie's testimony was corroborated by Wendell Shoemaker, a pharmacist, and Theresa Bradley, a pharmacy technician, both of whom admitted filling prescriptions for Scott and Collie in exchange for money.

Scott's defense was that Collie was responsible for the fraudulent prescriptions, and that he himself had no involvement in the conspiracy. In his opening statement, Scott explained, "The issue in this case is really not about whether false prescriptions were submitted to Medicaid and filled. They were. The issue in this case is whether Mr. Scott knew and whether he knowingly and willfully participated." Similarly, during closing arguments, Scott stated, "This case is not about whether there was health care fraud . . . This case is solely about whether Mr. Scott knowingly and willfully conspired with Mr. Shoemaker, Ms. Bradley, and Mr. Collie, and whether he knowingly and willfully committed health care fraud."

The Confrontation Clause issue relates to a CD of Medicaid claims data that

3

the government introduced into evidence on the first day of trial. Michael Johnson, a former supervisor with the Georgia Department of Audits and Accounts, explained that the CD contained approximately 17,000 out of the 1 million claims processed annually in the state of Georgia. The CD was based on records kept by the Department of Audits in the regular course of its business. Although Johnson reviewed the data on the CD for accuracy, he did not create the CD himself.

Scott objected to the introduction of the CD into evidence. He argued that, under the Confrontation Clause of the Sixth Amendment, he had the right to cross-examine the employee who actually prepared the CD. The government conceded that the CD was prepared in anticipation of litigation, but it asserted that the CD was nonetheless admissible because it was based on regularly kept business records. The court overruled Scott's objection and admitted the CD into evidence.

During Scott's trial, the district court held a *Daubert* hearing concerning the government's expert fingerprint evidence. The fingerprint examiner, LeCroy, explained that she analyzed fingerprints using the ACE-V method, which consists of four steps: analysis, comparison, evaluation, and verification. Under the analysis step, the examiner determines if a partial, or latent, print has sufficient unique features, known as "minutia," to be compared to another fingerprint. At the comparison step, the examiner compares the latent fingerprints to a known set of

4

fingerprints.   Under the evaluation step, the examiner reaches one of three conclusions: (1) identification or individualization, meaning that both the latent prints and the inked prints were made by the same individual; (2) exclusion, meaning that the known individual did not make the latent prints; or (3) an inconclusive result.   After the examiner makes an evaluation, her work is reviewed by a second examiner in the verification step.  If both examiners come to the same conclusion, the results are officially reported.  During her five years as a fingerprint examiner, LeCroy had made 1 technical error and 20 to 30 administrative errors.

On cross-examination, LeCroy acknowledged that there were no studies showing that latent fingerprints are unique.  In certain cases, fingerprint evidence has produced incorrect identifications.  Although fingerprint examiners describe their conclusions in absolute terms, there are no scientific studies as to how complete a latent print needs to be in order to be unique.  Unlike DNA evidence, there is no known percentage error rate for fingerprint examination.  Fingerprint examination is based on published methodologies, but it is subjective in that the comparison is being made by a human.  No two prints are exactly identical.  The examiner must determine whether any differences between the prints are caused by factors such as pressure or distortion or whether the two prints are actually unique.

Although the ACE-V method has been in use for 15 to 20 years, it is not based on scientific or statistical studies.

The district court ruled that LeCroy's testimony was admissible under *Daubert*. The court concluded that fingerprint examination was reliable because it was based on "eighty years of statistical study and analysis." The court also noted that LeCroy had followed the standard protocol adopted by the laboratory, which had been tested. The court observed that Scott would be able to raise his arguments concerning the accuracy of the fingerprint examination by cross-examining LeCroy in the presence of the jury.

In her trial testimony, LeCroy explained the ACE-V process to the jury. She stated that she detected a number of latent prints on prescription pads seized by the government, and had matched five of those latent prints to Scott's known fingerprints. Scott cross-examined LeCroy concerning the possible flaws and drawbacks of fingerprint examination.

The jury found Scott guilty with respect to all 21 counts of the superseding indictment. At the sentencing hearing, the district court determined that Scott had an advisory guideline range of 135-168 months' imprisonment. Scott urged the district court to consider the need to avoid unwarranted sentencing disparities. He observed that Collie, who had not yet been sentenced, was likely to get a relatively

6

low sentence even though he had prior fraud convictions. He also noted that Shoemaker would receive a sentence of no more than five years, and that Bradley had not been charged at all. Scott asserted that a sentence of five years would be sufficient to serve the purposes of sentencing. The government responded that Scott should receive a sentence at the high end of the guideline range, 168 months, based on the nature of his offense, his criminal history, and the need for deterrence.

The district court noted that Medicare and Medicaid fraud is a growing problem. The court recognized that there might be a disparity between Scott's sentence and the sentences given to others, but it observed that "two wrongs do not make a right." The court explained that it would "set a sentence in accordance with the particular individual's participation." The court sentenced Scott to a term of 120 months as to Count 1, and concurrent terms of 24 months' imprisonment as to each of Counts 2 through 21, to be served consecutively to the sentence for Count One, for a total term of 144 months' imprisonment. The court stated that it had considered all of the 18 U.S.C. § 3553(a) factors, and had focused in particular on the need for incapacitation, Scott's prior criminal record, the kinds of sentences available, and the need for a sentence that reflected the seriousness of the offense. The district court later sentenced codefendant Collie to a total term of 18 months' imprisonment.

II.

Whether evidence is testimonial for purposes of the Confrontation Clause is a question of law that we review *de novo*. *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010). Violations of the Confrontation Clause are subject to harmless-error analysis. *Id.* at 1229 n.1. A Confrontation Clause violation is harmless if it is "clear beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (quotation omitted).

The Confrontation Clause prohibits the admission of testimonial hearsay statements in a criminal case unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004). In *Crawford*, the Supreme Court declined to provide a comprehensive definition of what statements are testimonial, *see id.* at 68, 124 S.Ct. at 1374, but it did list business records as an example of statements that, "by their nature," are not testimonial, *see id.* at 56, 124 S.Ct. at 1367.

Recently, the Supreme Court has clarified that forensic and laboratory reports prepared for use during litigation are testimonial in nature. *Melendez-Diaz v. Massachusetts*, 557 U.S. ___, ___, 129 S.Ct. 2527, 2531-32, 174 L.Ed.2d 314 (2009). In *Melendez-Diaz*, the defendant objected to the admission of three

"certificates of analysis" showing that seized substances contained cocaine. *Id.* at ___, 129 S.Ct. at 2530-31. The Supreme Court concluded that the certificates were testimonial statements because they were made under oath for the purpose of establishing some fact and "under circumstances which would lead an objective witness reasonably to believe that [they] would be available for use at a later trial." *Id.* at ___, 129 S.Ct. at 2531-32 (quotation omitted).

Here, we need not decide whether a summary or excerpt of business records prepared for use in litigation constitutes a testimonial statement for the purposes of the Confrontation Clause because we agree with the government that any error in admitting the CD was harmless. The CD merely established that Georgia Medicaid was billed for certain prescriptions. At trial, Scott did not dispute the fact that Medicaid fraud occurred. Rather, his defense was that Collie and others carried out the conspiracy by themselves, and that he had no knowledge of or personal involvement in the scheme. Because the CD merely corroborated a fact that Scott conceded, and did not shed any light on the key factual dispute at trial—whether Scott was personally involved in the conspiracy—the admission of the CD could not have had an impact on the jury's verdict. Thus, any Confrontation Clause error in this case was harmless. *See Caraballo*, 595 F.3d at 1229 n.1.

III.

9

We review a district court's decision to admit expert testimony for an abuse of discretion. *United States v. Brown*, 415 F.3d 1257, 1264-65 (11th Cir. 2005). Under the abuse of discretion standard, the district court is allowed a range of choice, and we will affirm unless the district court applied the wrong law, followed the wrong procedure, relied on clearly erroneous facts, or committed a clear error in judgment. *Id.* at 1265-66. Because the issue of whether to admit expert testimony requires a case-specific and fact-intensive inquiry, we give particular deference to the district court's decision to admit or exclude such testimony. *Id.*

Under the Federal Rules of Evidence, expert testimony is admissible if: (1) the expert is qualified to testify regarding the subject matter of his testimony; (2) the methodology that the expert used to reach his or her conclusions is sufficiently reliable; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or in determining a fact at issue. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*); Fed.R.Evid. 702. Before permitting expert testimony, the district court must make a preliminary determination as to whether the expert's methodology is reliable. *Brown*, 415 F.3d at 1266. The Supreme Court has provided a non-exclusive list of factors for the district court to consider:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the

known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Frazier*, 387 F.3d at 1262. These factors are only general guidelines, and the trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999).

We previously have upheld the admission of expert fingerprint evidence under *Daubert*. *United States v. Abreu*, 406 F.3d 1304, 1307 (11th Cir. 2005). In *Abreu*, we observed that the government had presented information about the error rate of fingerprint examination, and had shown that examiners follow a uniform methodology. *Id.* In addition, we explained that the district court did not clearly err by giving significant weight to the general acceptance of fingerprint evidence. *Id.* Other Circuits have upheld the admission of expert testimony concerning fingerprint examination as well. *See, e.g.*, *United States v. Pena*, 586 F.3d 105, 110-11 (1st Cir. 2009) (the district court did not abuse its discretion by permitting expert testimony that was based on the ACE-V method); *United States v. Mitchell*, 365 F.3d 215, 221-22, 246 (3d Cir. 2004) (same); *United States v. Baines*, 573 F.3d 979, 983, 989-92 (10th Cir. 2009) (same); *United States v. Crisp*, 324 F.3d 261, 266-70 (4th Cir. 2003) (upholding admission of fingerprint evidence under

*Daubert*, and noting that "[f]ingerprint identification has been admissible as reliable evidence in criminal trials in this country since at least 1911."); *United States v. Havvard*, 260 F.3d 597, 600-02 (7th Cir. 2001) (testimony concerning latent fingerprint examination was properly admitted under *Daubert*).

In this case, the district court did not abuse its discretion by admitting expert testimony concerning fingerprint examination. At the *Daubert* hearing, the government established that fingerprint testing follows a formal, established methodology. Although there is no scientifically determined error rate, the examiner's conclusions must be verified by a second examiner, which reduces, even if it does not eliminate, the potential for incorrect matches. The ACE-V method has been in use for over 20 years, and is generally accepted within the community of fingerprint experts. Based on this information, the district court did not commit an abuse of discretion by concluding that fingerprint examination is a reliable technique.

More generally, federal courts routinely have upheld the admissibility of fingerprint evidence under *Daubert*. *See Abreu*, 406 F.3d at 1307; *Pena*, 586 F.3d at 110-11; *Mitchell*, 365 F.3d at 246; *Baines*, 573 F.3d at 989-92; *Crisp*, 324 F.3d at 266-70; *Havvard*, 260 F.3d at 600-02. The district court did not commit a clear error in judgment by reaching the same conclusion in this case. Finally, we note

that Scott was able to cross-examine the government's expert at trial concerning the possible flaws in her methodology. The district court's decision to admit the fingerprint expert's testimony, subject to a searching cross-examination, did not fall outside the permissible "range of choice" in this case. *See Brown*, 415 F.3d at 1265. Accordingly, we find no abuse of discretion in the admission of the expert testimony concerning fingerprint examination.

IV.

We review a sentence imposed by a district court for reasonableness, using an abuse-of-discretion standard. *United States v. Livesay*, 587 F.3d 1274, 1278 (11th Cir. 2009). We follow a two-step process in reviewing a sentence. First, we must ensure that the district court did not commit a significant procedural error. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597, 169 L.Ed.2d 445 (2007). If the district court's sentencing decision is procedurally sound, we must then determine whether the sentence is substantively reasonable in light of the 18 U.S.C. § 3553(a) factors. *Id.* at 51, 128 S.Ct. at 597.

The party challenging the sentence has the burden of showing that it is unreasonable in light of the record and the § 3553(a) factors. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). "[W]e recognize that there is a range of reasonable sentences from which the district court may choose," and ordinarily

13

expect a sentence within the defendant's advisory guideline range to be reasonable. *Id.* We "will defer to the district court's judgment regarding the weight given to the § 3553(a) factors unless the district court has made a clear error of judgment." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (quotation omitted), *cert. denied*, 129 S.Ct. 2848 (2009).

In this case, the district court did not abuse its discretion by sentencing Scott to a total term of 144 months' imprisonment. Scott played a leading role in a fraud scheme that resulted in a loss of over $1 million to Georgia Medicaid. Thus, a longer term of imprisonment was needed to reflect the serious nature of his offenses. *See* 18 U.S.C. § 3553(a)(1). In addition, Scott previously was incarcerated for his involvement in a similar scheme to defraud Florida Medicaid. Therefore, a longer sentence was justified based upon Scott's personal history and characteristics, the need to promote respect for the law, and the need to protect the public from further crimes committed by Scott. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(C). Scott's sentences also have the effect of deterring others from committing health care fraud offenses. *See* 18 U.S.C. § 3553(a)(2)(B). Also, Scott's total term of imprisonment is within the advisory guideline range, which we ordinarily expect to be reasonable. *See Talley*, 431 F.3d at 788.

Although Scott asserts that the district court should have given more weight

to the need to avoid unwarranted sentencing disparities, *see* 18 U.S.C. § 3553(a)(6), he has not demonstrated that he was similarly situated to the co-conspirators who received shorter sentences. Collie, Shoemaker, and Bradley eventually admitted to their participation in the conspiracy and cooperated with the government. We have explained that a sentencing disparity is not unwarranted if it reflects the fact that one of the defendants pled guilty and cooperated with the government. *United States v. Williams*, 526 F.3d 1312, 1323 (11th Cir. 2008). Also, Scott played a greater role in the conspiracy than Collie, Shoemaker, or Bradley, as he planned, organized, and funded the conspiracy. Finally, Scott did not show that Collie, Shoemaker, or Bradley had criminal histories that were similar to his own. Because Scott did not establish that he was similarly situated to his co-conspirators, the district court did not have to give significant weight to the need to avoid unwarranted sentencing disparities. When all of the § 3553(a) factors are taken into consideration, Scott's total sentence of 144 months' imprisonment is substantively reasonable.

Accordingly, we affirm Scott's convictions and sentences.

**AFFIRMED.**