**Opinion filed March 28, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00060-CR

_____

## LARRY HAROLD FORWARD, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR37755**

### O P I N I O N

The jury convicted Larry Harold Forward of failure to appear and, after finding the enhancement paragraphs to be true, assessed his punishment at confinement for thirty-five years. The trial court sentenced him accordingly. We affirm.

Forward presents four issues for our review. In his first issue, Forward alleges that the evidence was legally insufficient to prove his prior convictions for enhancement purposes. In his second issue, he contends that the trial court committed reversible error when it admitted prior judgments of conviction without a showing that he was the same individual as that in the prior

judgments. Forward argues in his third and fourth issues that he was denied effective assistance of counsel because his trial counsel failed to object to hearsay testimony and testimony regarding prior offenses during the guilt/innocence phase.

In Issues One and Two, Forward argues that the testimony of the State's fingerprint expert should not have been admitted because the expert did not compare the fingerprints according to an accepted method. Without the fingerprint expert's testimony, Forward asserts, there is no link between him and the certified judgments, and the judgments were inadmissible. He also asserts that, without the fingerprint expert's testimony, there was insufficient evidence to prove that he was the same person as that shown to have been previously convicted in the prior judgments.

We will first address Forward's second issue that the trial court erred when it admitted the prior judgments of conviction. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). We will reverse a trial court's ruling only if it is outside the "zone of reasonable disagreement." *Id.* Certified judgments are admissible as long as the State links the defendant to the judgment through independent evidence. *Beck v. State*, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986). It is not necessary for the State to prove the existence of the link prior to the time that the trial court admits the certified judgment, but it must be shown before the evidence is closed. *Id.* Otherwise, the prior judgments are not relevant to the State's case and should be stricken from the jury's consideration. *Davis v. State*, 268 S.W.3d 683, 715–16 (Tex. App.—Fort Worth 2008, pet. ref'd). One of the most common ways to link the defendant to a prior judgment is through a fingerprint expert. *Beck*, 719 S.W.2d at 209.

Here, the State called Larry Shackelford as an expert witness on fingerprint identification. Shackelford testified that he uses the ACE-V method to compare two sets of patent fingerprints to determine whether the prints belong to the same person. In the first step of the ACE-V method, the examiner analyzes the fingerprints to determine whether there is sufficient detail to make a comparison. If there is sufficient detail, the examiner compares the two prints by physically looking at the prints to determine if there is a match. The third step is evaluation. In this step, the examiner makes a final determination of whether the prints are made by the same person. The "V" stands for verification, and Shackelford testified that "[n]ormally we have a second person also look at our results that we find."

2

Shackelford analyzed, compared, and evaluated a set of Forward's known prints, taken prior to Shackelford's testimony, with fingerprint cards contained in prior judgments of conviction and opined that Forward's known prints matched the fingerprints contained in each judgment. However, Shackelford testified that he did not have a second person look at his results in this case. The State offered twenty-three different prior judgments of conviction. Forward objected to each exhibit on the ground that Shackelford failed to have a second individual verify his results and, thus, did not conduct the fingerprint analysis properly. The court allowed the State to further question Shackelford, and he testified that there was no uncertainty that the fingerprints matched; he was positive that they were a match. The trial court overruled each of Forward's objections, and all twenty-three priors were admitted.

After the judgments were admitted into evidence, Shackelford testified that, based on his training and experience, the fact that he did not have a second person verify the fingerprint comparison did not in any way invalidate, discredit, or weaken his belief that the fingerprints were a match. Shackelford explained that latent fingerprints are not visible to the naked eye and must be developed with a powder or other chemical substance in order for the print to be visible. Patent prints are visible, such as when made on a mirror or with ink. He testified that latent prints recovered from a crime scene are normally only partial prints and that there is a difference between comparing a partial latent print with a set of prints and comparing two different sets of patent prints. On cross-examination, he testified that ACE-V is a standard that is recognized throughout the nation and the world and that the standard includes verification. On redirect, Shackelford testified that he had provided expert testimony on fingerprint comparisons similar to the ones he did that day and that it was not normal for him to have somebody check his work in doing those kinds of comparisons.

Forward contends on appeal that, because courts have evaluated the verification step under the peer review factor in *Daubert*[1] and held that the verification step favors admissibility, the ACE-V method does not satisfy *Daubert* if the verification step is not performed. However, *Daubert* does not require that each factor be satisfied in order for a scientific method to be reliable, but instead lays out a nonexclusive list of factors for the court to consider in order to determine whether the method is reliable. 509 U.S. at 593. We note that Forward did not request, nor did the trial court hold, a *Daubert* hearing in this case. Furthermore, none of the cases that Forward

---

[1]*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

directs us to hold that, without verification, the method is unreliable and inadmissible. In fact, one of the cases Forward directs us to finds the method admissible despite the fact that there was no evidence of peer review, and all the cases deal with latent prints, not patent prints. *See United States v. Pena*, 586 F.3d 105 (1st Cir. 2009); *United States v. Baines*, 573 F.3d 979, 990, 992 (10th Cir. 2009) (holding district court did not abuse its discretion when it admitted the fingerprint expert's testimony even when government did not show that the ACE-V method had been subject to peer review and, thus, peer review factor did not favor admissibility); *United States v. Mitchell*, 365 F.3d 215 (3rd Cir. 2004); *United States v. Scott*, 403 F. App'x 392 (11th Cir. 2010).

Forward compares Shackelford's failure to complete the verification step to DWI cases in which police officers fail to administer the HGN test correctly. He directs us to *McRae v. State*, 152 S.W.3d 739 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd), for the proposition that an expert's testimony is inadmissible when the expert applies an accepted technique improperly. *See also Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) (holding third criterion for reliability is that technique must have been properly applied on occasion in question). However, there was no evidence that Shackelford performed any portion of his actual comparison incorrectly. The only portion of the method that was lacking was the verification. We do not agree that this renders the test unreliable and inadmissible as it would when an officer fails to perform the HGN test correctly. We note that we may have reached a different result if Shackelford had testified that he did not analyze, compare, or evaluate the fingerprints properly under the ACE-V method; however, those are not the facts presented before us today.

In *United States v. John*, the appellant challenged the reliability of the government's fingerprint evidence on the ground that it was not verified by a second expert. 597 F.3d 263, 275 (5th Cir. 2010). The court there noted that it was unable to locate any case that supported the assertion that verification is required. *Id.* Like the Fifth Circuit, we are also unable to locate any case that stands for the proposition that verification is required in order for fingerprint comparison testimony to be reliable. Further, the Fifth Circuit held that issues regarding the accuracy of fingerprint evidence go to the weight and credibility of the witness and, therefore, that the trial court did not abuse its discretion when it admitted the expert's testimony. *Id.* at 275–76. The same is true here. The jury was free to take the lack of verification into account when it determined whether to believe the expert's testimony; however, the lack of verification

did not render the expert's testimony unreliable. The trial court did not abuse its discretion when it admitted Shackelford's testimony. We overrule Forward's second issue.

In Forward's first issue, he argues that the evidence was insufficient to sustain the jury's finding of true on the enhancement paragraphs. The State alleged that Forward was previously convicted of the felony offenses of aggravated assault with a deadly weapon, retaliation, and assault on a public servant. The jury was instructed that, if it believed beyond a reasonable doubt that Forward was previously convicted of assault on a public servant and also previously convicted of aggravated assault with a deadly weapon or of retaliation, the jury would assess Forward's punishment at a term of twenty-five to ninety-nine years. In order to prove that a defendant has prior convictions for enhancement purposes, the State must prove that (1) a prior conviction exists and (2) the defendant is linked to the prior conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007).

We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

State's Exhibit No. 18 is a certified judgment of conviction for assault on a public servant committed by a Larry Harold Forward. State's Exhibit No. 19 contains certified judgments for retaliation and aggravated assault with a deadly weapon committed by a Larry Harold Forward. Forward argues that the trial court should not have admitted Shackelford's testimony and that, without his opinion that Forward's fingerprints matched the fingerprints in the certified judgments, there was insufficient evidence to show that Forward was the same person as the person named in the certified judgments. Because we have found that the trial court did not err when it admitted the certified judgments based on Shackelford's testimony, the jury was free to rely on Shackelford's testimony in determining whether Forward was the same person as that in the certified judgments.

In addition to Shackelford's testimony that Forward's fingerprints and the person's fingerprints as shown in the certified judgments were a match, the certified judgments that

pertained to the enhancement paragraphs also contained photographs that the jury was able to compare to Forward. Matching a photograph of the defendant in a penitentiary packet or certified judgment to the defendant at trial has been held to be sufficient evidence that the defendant at trial is the same person as that in the prior judgment of conviction. *Littles v. State*, 726 S.W.2d 26, 31–32 (Tex. Crim. App. 1987) (op. on reh'g). Furthermore, the judgments contained Forward's birth date, and the jury could have matched the birth date in each judgment with the birth date listed on the fingerprint card that contained the fingerprints that Shackelford took from Forward prior to Shackelford's testimony during the punishment phase.

We have reviewed the evidence in the light most favorable to the verdict, and we hold that the jury could have found beyond a reasonable doubt that Forward committed two prior felonies. Forward's first issue is overruled.

Forward asserts in his third and fourth issues that he was denied effective assistance of counsel because his attorney failed to object to hearsay testimony regarding his whereabouts and also failed to object during the guilt/innocence phase to testimony regarding his prior offenses. In order to determine whether Forward's trial counsel rendered ineffective assistance at trial, we must first determine whether he has shown that his counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for his counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999); *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Forward must overcome the presumption that, under the circumstances, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Where the record is silent, we cannot speculate on trial counsel's strategy. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Thus, an allegation of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* Generally, the record on direct appeal will not be sufficient to show that trial counsel's performance was so lacking as to overcome the presumption of reasonable conduct. *Id.* at 813–14.

Forward contends in his third issue that his trial counsel should have objected to the bail bondsman's testimony regarding what Forward's girlfriend and her mother told the bondsman about Forward's whereabouts because it was inadmissible hearsay. He claims that the State elicited that testimony to show that Forward intentionally and knowingly failed to appear for his court date. The following exchange took place between the prosecutor and Forward's bail bondsman, Manuel Lujan:

> Q. In this particular case, you said that you contacted or tried to contact Mr. Forward after you heard from the Court. Is that something you would have done pretty quickly after you heard from the Court?
>
> A. Yes, sir.
>
> Q. And were you able to get in contact with Mr. Forward at any time about missing court?
>
> A. No, sir.
>
> Q. How hard did you try to find him?
>
> A. I contacted his girlfriend multiple times, she said she didn't know where he was at. I contacted his girlfriend's mother, who basically knew more or less the whereabouts, and she indicated that she was under the impression that he was on his way to Arizona.
>
> Q. Did at any time Mr. Forward, in relation to missing court that particular day, did he at any time contact you to tell you why he didn't come to court or that he was going to go to court or anything else?
>
> A. No, sir, he did not.

The State argues that it may have been part of Forward's trial strategy not to object to these responses in an effort not to draw the jury's attention to the witness's statement. The prosecutor did not ask any more questions about what the girlfriend or mother knew, nor did he reference Lujan's statement during his closing argument. Without a record of defense counsel's reasons for not objecting to Lujan's response, Forward has not overcome the presumption that his counsel's actions were within the wide range of reasonable professional assistance of counsel. Therefore, Forward has not met the first prong of *Strickland*. We overrule his third issue.

7

In his fourth issue, Forward claims his counsel was ineffective because his counsel did not object to two instances when witnesses testified about Forward's extraneous offenses and prior convictions.

The first instance took place when the prosecutor asked Lujan how he knew Forward, and Lujan responded, "I bonded him out on numerous occasions." The prosecutor did not ask any follow-up questions or mention in closing that Lujan had bailed Forward out of jail numerous times. Here again, the record is silent as to why defense counsel decided not to object to Lujan's response.

The second instance occurred during the following exchange between the prosecutor and Deputy U.S. Marshal George Sydney Butcher:

> Q. During the point you were searching the residence, did you notice anything out of the ordinary or unusual about the residence itself?
>
> A. Yes, sir.
>
> Q. Can you tell the jury what that was?
>
> A. Upon approaching the residence, we did observe a surveillance camera on the front of the residence.
>
> Q. And why did that seem unusual to you?
>
> A. It's unusual in the fact that most people do not have them. Furthermore, it's indicative of someone wanting to know -- if they're inside the residence, knowing what's going on outside the residence. Primarily it has to do -- where we see a lot of that is people who deal in narcotics.
>
> Q. And again, just to clarify and make sure, this was not a narcotics investigation anyway?
>
> A. No, sir.

Forward argues that this evidence was irrelevant and was only used to portray him as a criminal. However, Deputy U.S. Marshal Butcher also testified that he found Forward under a pile of clothes and that Forward told him he saw him coming because he was watching him on the surveillance camera. Therefore, the testimony about the camera was not irrelevant, but was introduced to show that Forward intentionally and knowingly failed to appear for his court date. Deputy U.S. Marshal Butcher testified that this was not a narcotics investigation and,

furthermore, that this was not Forward's home.  Regardless of whether Deputy U.S. Marshal Butcher's responses were objectionable, the record is again silent as to why Forward's counsel failed to object.  Thus, Forward has not overcome the presumption that, when his counsel did not object to Lujan's or Deputy U.S. Marshal Butcher's testimony, he was acting within the wide range of reasonable professional assistance of counsel.[2]

Forward also argues that his counsel was ineffective because he did not file a motion in limine regarding extraneous acts, did not object during voir dire when the prosecutor asked the prospective jurors whether they could consider enhanced penalties, did not request a limiting instruction on the extraneous acts, and did not object to the charge.  The clerk's record shows that Forward's defense counsel filed a motion in limine; thus, Forward's claim of ineffectiveness on this ground is without merit.  His claim of ineffectiveness as to the exchange during voir dire is also without merit because the parties are permitted to ask prospective jurors whether they are able to consider the full range of punishment, including possible enhanced penalties; thus, any objection made by defense counsel would have been futile.  *Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010) ("Both the State and defense are entitled to jurors who can consider the entire range of punishment for the particular statutory offense.").

As to the claim that his counsel was deficient when he failed to request a limiting instruction or when he failed to object to the charge, Forward argues specifically that his counsel should have requested such an instruction based on the extraneous evidence of Forward's prior drug use.  However, Deputy U.S. Marshal Butcher did not testify that Forward used drugs or that he was being investigated for drugs.  He specifically testified that Forward was not being investigated for drugs.  In addition, Lujan's testimony that he had bonded Forward out on numerous occasions was too vague to show that Forward had committed any specific bad act, such as using drugs.  There was no other evidence admitted during the guilt/innocence phase that suggested Forward previously used drugs.  There was one prior judgment of conviction for a drug offense admitted in the punishment phase, but the court's charge in the punishment phase contained an extraneous offense instruction.  Therefore, we find that Forward has not shown that his defense counsel was ineffective when he failed to request an extraneous offense instruction or otherwise object to the charge.  Because we have found that Forward has not met the first prong

---

[2]We note that Forward requests, in the alternative, for a hearing to determine why defense counsel failed to object to the extraneous offense evidence.  However, a hearing on direct appeal is not proper and may only be pursued through a writ of habeas corpus.

9

of *Strickland* on any ground of ineffectiveness as to extraneous offenses or prior convictions, we overrule Forward's fourth issue.

The judgment of the trial court is affirmed.

JIM R. WRIGHT
CHIEF JUSTICE

March 28, 2013

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.