**Joyce Ann MOSS, Appellant,**

v.

**The STATE of Texas.**

**Nos. 2–97–500–CR, 2–97–501–CR.**

Court of Appeals of Texas,
Fort Worth.

March 9, 2000.

Sharon E. McLauchlin, Fort Worth, for appellant.

Tim Curry, Dist, Atty., Charles M. Mallin, Asst. Dist. Atty., and Chief of Appellate Section, Sylvia Mandel, Leslie Hardy, Asst. Dist. Attys., Fort Worth, for appellee.

PANEL B: DAUPHINOT and HOLMAN, JJ.; WILLIAM BRIGHAM, J. (Retired, Sitting by Assignment).

## OPINION

### INTRODUCTION

LEE ANN DAUPHINOT, Justice.

Appellant Joyce Ann Moss entered open pleas of guilty to two charges of aggravated robbery with a deadly weapon. The trial court sentenced Appellant to twenty-five years' confinement in each case, to be served concurrently. In four issues on appeal, Appellant argues that the trial court's judgments and sentences are void for want of jurisdiction, that she did not knowingly and voluntarily enter her pleas of guilty, that trial counsel's ineffective assistance renders her pleas involuntary, and that the trial court's judgments should be reformed to remove the deadly weapon findings. Finding no reversible error, we affirm the trial court's judgments.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged in separate indictments with two counts of aggravated robbery with a deadly weapon, alleged to have occurred on August 24, 1995 and on August 26, 1995. Because Appellant was sixteen years old at the time of these offenses, her cases were originally filed in the 323 rd District Court of Tarrant County, which is a juvenile court (the juvenile court). The State filed a petition in each case requesting that the juvenile court waive its exclusive original jurisdiction and transfer Appellant to the appropriate criminal district court. The juvenile court entered an order waiving its jurisdiction in each case and transferring Appellant to the appropriate criminal district court (the transfer order). Appellant was first transferred to Criminal District Court No. 2 and then to the 371 st District Court (the trial court), both of which are criminal district courts. Because Appellant's complaints on appeal relate to the transfer from juvenile court to criminal district court, the transfer between the two criminal district courts is not relevant to the disposition of this appeal. The transfer order, however, was not filed with the papers of the trial court.

Appellant entered open pleas of guilty to both offenses. She testified that she, John Glasco, and Chris Smith committed two robberies at ATM machines. Appellant, however, denied having a gun during the robberies and testified that only Glas-

co had a gun. The trial court found Appellant guilty of both offenses and entered an affirmative finding that Appellant used or exhibited a deadly weapon during the commission of the offenses or during the immediate flight therefrom. At the punishment hearing, one victim identified Appellant, but not with 100 percent certainty, as the get-away driver. The other victim testified that she had seen only Glasco.

On May 4, 1998, Appellant filed her original appellate brief, arguing that the judgments and sentences are void for want of jurisdiction, that she did not knowingly and voluntarily enter her pleas of guilty, that her trial counsel's ineffective assistance renders her pleas involuntary, and that the judgments should be reformed to remove the deadly weapon findings. Specifically, with regard to jurisdiction, Appellant contends that because the order transferring her from juvenile court to criminal district court was not filed with the district clerk's office and was not among the trial court's papers, the record does not affirmatively show that the juvenile court waived its jurisdiction. On May 21, 1998, a deputy district clerk filed in this court the first supplemental clerk's record, containing the transfer order, the State's petition requesting that the juvenile court waive its jurisdiction, the juvenile court's docket sheet, and a letter from the assistant district attorney on appeal. This letter states that the clerk of the juvenile court had located copies of the transfer order, the State's petition, and the docket sheet and requests that the deputy district clerk prepare, certify, and file in this court a supplemental clerk's record of the located items.

The State then filed a motion to abate the appeal. Appellant filed a motion to strike the first supplemental clerk's record and, alternatively, a motion for leave to file an amended brief. This court granted the State's motion to abate the appeal, ordered the cause abated, and remanded the case to the trial court. This court ordered the trial court to conduct a hearing with the attorneys of record present in order to: (1) determine if the certified copy of the transfer order is an accurate copy of the missing transfer order; (2) determine if any omissions in the transfer order can be reconstructed; and (3) make appropriate findings and recommendations.

The trial court conducted an abatement hearing on July 9, 10, and 14, 1998. At the beginning of the hearing, Appellant's attorney conceded that the copy of the transfer order contained in the first supplemental clerk's record is an accurate copy. Scheresa Hudson (Hudson), the deputy district clerk assigned to the juvenile court, testified that when the juvenile court signed and entered the transfer order, she prepared three certified copies of the transfer order. She sent two copies to the investigator in the district attorney's office and sent the third copy via interoffice mail to the district clerk's office. She testified that the copies sent to the district attorney's office were the copies designated for filing and that, at the time the transfer order in this case was entered, the investigator with the district attorney's office usually filed a certified copy of the transfer order with the district clerk.

The felony intake clerk at the district clerk's office and the deputy district clerks assigned to Criminal District Court No. 2 and the 371 st District Court each testified that she did not receive the transfer order for filing. The parties stipulated that the district clerk's office did not receive the transfer order for filing until May 1998 when Hudson filed a certified copy of the transfer order with the district clerk's office for inclusion in a supplemental clerk's record. After the abatement hearing, the trial court adopted and incorporated into its order the State's proposed findings of fact and conclusions of law. The trial court's findings of fact are summarized as follows:

(1) The contents of the first supplemental clerk's record are accurate copies of the missing items, including the transfer order.

(2) The deputy district clerks are responsible for the care, custody, and control of documents tendered for filing and for orders signed by their courts.

(3) In September 1995, the District Clerk of Tarrant County did not have any specific procedures to follow to ensure that orders from the juvenile court judge got forwarded to the "downtown" criminal courts. Procedures now exist where the intake clerk at the district clerk's office receives two certified copies of transfer orders, one from the district attorney's office and one from Hudson sent via interoffice mail. Prior to the institution of these procedures, the intake clerk at the district clerk's office received transfer orders sometimes from the district attorney's office, sometimes from Hudson, sometimes from both, and "sometimes, as the Court finds happened here, from neither."

(4) The district clerk's office did not receive for filing certified copies of the transfer order.

(5) Hudson prepared a certified copy of the transfer order and placed it into interoffice mail. The parties stipulated that this certified copy was never filed or found. The trial court, therefore, finds and concludes that this certified copy was lost.

(6) Hudson testified that she, or someone else in the district clerk's office at the juvenile court, routinely prepares certified copies of transfer orders for the district attorney's office for filing with the adult criminal district court. The parties stipulated, and the trial court finds, that the district attorney's office did not file a certified copy of the missing transfer order until the first supplemental clerk's record was filed.

(7) The certified copies of the transfer order prepared for the district attorney's office were lost until July 9, 1998, at which time they were found in the State's trial file. The State brought these copies to the trial court on the morning of July 10, 1998,

and both parties agreed to the admission of these copies. The tendered copies are the lost certified copies prepared for the district attorney's office.

(8) Judge Scott Moore conducted a certification hearing with Appellant and her counsel present. Judge Moore withheld ruling on the certification, continued the hearing until September 14, 1995, and indicated that he would rule on that date.

(9) Judge Moore entered his finding on the juvenile court's docket sheet on September 14, 1995. Judge Jean Hudson Boyd reviewed Judge Moore's docket notation and brought Appellant, her attorney, and the assistant district attorney into court on September 14, 1995 for the conclusion of the certification hearing. Judge Boyd advised Appellant of the juvenile court's ruling and her right to appeal. Neither Appellant nor her attorney objected to the proceedings.

(10) The transfer order was signed and entered by Judge Boyd without objection from Appellant.

(11) The reporter's record from the certification hearing, the transfer order, and Judge Boyd's affidavit support the assistant district attorney's testimony that Judge Boyd signed the transfer order.

(12) Appellant did not object to any of the proceedings in juvenile court and waived her right to an examining trial, asserting that she had already been certified and did not require a further examining trial.

The trial court also entered conclusions of law, summarized as follows:

(1) The transfer order vested the criminal district court with jurisdiction.

(2) The transfer order that the parties stipulated was a correct copy of the missing transfer order meets all of the statutory requirements as they existed at the relevant time for a juvenile court to waive jurisdiction and transfer Appellant for prosecution in criminal court.

(3) Judge Boyd correctly advised Appellant of her right to appeal the transfer order. Because the time for appealing non-jurisdictional defects has passed, Appellant has waived her right to object to non-jurisdictional irregularities in the certification process.

(4) The procedural irregularities, if any, in this case did not affect the jurisdiction of the criminal courts.

(5) A document is "filed" when it is tendered to the clerk, or otherwise put under the custody or control of the clerk. Because the evidence shows that Hudson had and still has exclusive control of the original transfer order, it is the district clerk's responsibility to forward copies of orders affecting the jurisdiction of two district courts. To find otherwise would allow a litigant veto power over the exercise of jurisdiction of a district court without the knowledge or consent of the sister district court.

(6) The transfer order was filed on September 14, 1995, the date it was signed and entered and the date the district clerk acknowledged possession of the document by certifying copies. The filing was not properly completed until the filing of the first supplemental clerk's record. The transfer order was tendered for filing by the submission of the certified copy via interoffice mail on September 14, 1995. The transfer order was lost. Because the filing was completed before the case is to be submitted to the court of appeals, the trial court should recognize the document as properly before the court.

(7) The family code does not require that the juvenile court file its order. There are no statutory provisions placing the burden on any person to file a transfer order. *Ellis v. State* strongly advises that the transfer order be filed and kept on file with the court papers in the case, but it falls far short of requiring that the transfer order be filed.[1]

(8) The district attorney cannot defeat a district judge's transfer order by failing to file the transfer order. To hold otherwise would violate the separation of powers provision of the Texas Constitution.

The trial court filed with this court a reporter's record of the abatement hearing and second and third supplemental clerk's records. Appellant then filed a supplemental brief, raising nine additional issues on appeal, all of which relate to Appellant's assertion that the trial court lacked jurisdiction.

## TRIAL COURT'S JURISDICTION

In her first issue in her original brief, Appellant argues that the trial court's judgments and sentences are void for want of jurisdiction. In her first and second issues in her supplemental brief, Appellant contends that the trial court erred in finding that the transfer order contained in the first supplemental clerk's record was lost and in finding that there were no procedures in place in 1995 to ensure that transfer orders were forwarded to the district clerk's office. Appellant asserts that there is no evidence to support these findings and that these findings are clearly erroneous. In issues three through eight in her supplemental brief, Appellant argues that all of the trial court's conclusions of law are incorrect as a matter of law and that the trial court did not properly apply the law to the facts. In her ninth issue in her supplemental brief, Appellant contends that the transfer order contained in the first supplemental clerk's record is an ex parte document that we should not consider.

### Standard of Review

As an appellate court, we should afford almost total deference to the trial court's determination of the historical facts that the record supports, especially when, as in this case, the trial court's fact findings are based on an evaluation of credibility and

---

1. *Ellis v. State,* 543 S.W.2d 135, 137 n. 2 (Tex.Crim.App.1976).

demeanor.[2]  And we should afford the same amount of deference to the trial court's rulings on mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor.[3]  We, however, may review de novo mixed questions of law and fact if the resolution of the ultimate questions does not turn on an evaluation of credibility and demeanor.[4]

A question turns on an evaluation of credibility and demeanor when the testimony of one or more witnesses, if believed, is always enough to add up to what is needed to decide the substantive issue.[5]  In the case before us, the testimony of the various witnesses is not enough to add up to what is needed to decide whether the trial court had jurisdiction over Appellant. We therefore review de novo the trial court's ruling on the ultimate question of whether it had jurisdiction.  In performing this review, however, we afford almost total deference to the trial court's determination of the historical facts that the record supports.

### Discussion

■ The penal code provides that a person may not be prosecuted for or convicted of any offense committed before reaching seventeen years of age, unless the juvenile court waives jurisdiction under section 54.02 of the family code and certifies the individual for criminal prosecution.[6]  The version of section 54.02 in effect at the time of Appellant's transfer provided that the juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if: (1) the child is alleged to have violated a penal law of the grade of felony; (2) the

child was fifteen years of age or older at the time the child is alleged to have committed the offense and no adjudication hearing has been conducted concerning that offense; and (3) after full investigation and hearing, the juvenile court determines that there is probable cause to believe that the child committed the offense alleged and that because of the seriousness of the offense or the background of the child, the welfare of the community requires criminal proceedings.[7]

On appeal, Appellant does not contest the propriety of the juvenile court's waiving its exclusive jurisdiction and transferring her to criminal district court, the fact that the juvenile court signed and entered the transfer order, or the accuracy of the copy of the transfer order contained in the first supplemental clerk's record.  Rather, she contends that the absence of the transfer order in the trial court's file deprives the trial court of jurisdiction.

Initially, we address Appellant's assertion that the copy of the transfer order contained in the first supplemental clerk's record is not a "lost" document, but rather is an ex parte document that this court should not consider.  Appellant argues that the district attorney's office did not lose the two copies of the transfer order located in its trial file, but simply failed to file them.  Appellant contends that the transfer order can be deemed a lost document only if the district clerk's office filed the transfer order and then lost it: "If the criminal district clerk never had the Transfer Order, then it is an ex-parte document, not a 'lost' document."  We disagree.

2.  See Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

3.  See id.

4.  See id.

5.  See Loserth v. State, 963 S.W.2d 770, 773 (Tex.Crim.App.1998).

6.  TEX. PENAL CODE ANN. § 8.07(b) (Vernon Supp.2000).

7.  Act of May 8, 1987, 70th Leg., R.S., ch. 140, § 1, 1987 Tex. Gen. Laws 309, 309 (amended 1995, 1999) (current version at TEX. FAM.CODE ANN. § 54.02(a) (Vernon Supp.2000)).

The rules of appellate procedure provide that if a relevant item has been omitted from the clerk's record, the trial court, the appellate court, or any party may direct by letter the trial court clerk to prepare, certify, and file in the appellate court a supplement containing the omitted item.[8] The supplemental clerk's record then becomes part of the appellate record.[9] Rule 34.5(e) sets forth the proper procedure to be followed when a filing has been lost or destroyed:

> If a filing designated for inclusion in the clerk's record has been lost or destroyed, the parties may, by written stipulation, deliver a copy of that item to the trial court clerk for inclusion in the clerk's record or a supplement. If the parties cannot agree, the trial court must—on any party's motion or at the appellate court's request—determine what constitutes an accurate copy of the missing item and order it to be included in the clerk's record or a supplement.[10]

Because rule 34.5(e) does not define the term "lost," we construe the word according to its common usage.[11] Our review of the record indicates that there was not a specific procedure for filing the transfer order. The felony intake clerk at the district clerk's office testified that she received transfer orders sometimes directly from the juvenile court, sometimes from the district attorney's office, and sometimes not at all. Hudson testified that she prepared three certified copies of the transfer order, sent two copies to the investigator in the district attorney's office, and sent the third copy via interoffice mail to the district clerk's office. Although the investigator in the district attorney's office sometimes filed the transfer order, we have found no authority placing on the district attorney's office the duty to file the transfer order.

The record reflects that the two copies of the transfer order sent to the district attorney's office were eventually located in the State's trial file on July 9, 1998, the day the abatement hearing began. The copy of the transfer order sent via interoffice mail to the district clerk's office was never located. In accordance with rule 34.5(c)(1), on May 20, 1998, Sylvia Mandel, the assistant district attorney on appeal, sent a letter to Nancy Gilliland, the appellate clerk for the district clerk's office, stating that Hudson had located copies of the juvenile court's docket, the State's petition requesting that the juvenile court waive jurisdiction, and the transfer order. The letter indicated that certified copies of these documents would be delivered to Gilliland that day and requested that Gilliland prepare, certify, and file in this court a supplement containing these missing items.

Because the parties could not agree on the accuracy of the copy of the transfer order, in accordance with rule 34.5(e), the trial court held a hearing and determined that the copy of the transfer order contained in the first supplemental clerk's record is an accurate copy of the missing transfer order. Appellant also stipulated that the copy in the first supplemental clerk's record is accurate. After reviewing the entire record of the abatement hearing, we conclude that the record supports the trial court's finding that the transfer order was lost and its finding that there were no procedures in place in 1995 to ensure that transfer orders were forwarded to the district clerk's office. We therefore overrule Appellant's first and second issues in her supplemental brief. We further conclude that the copy of the transfer order contained in the first supplemental clerk's record has been made a part of the appellate record under rules 34.5(c) and 34.5(e) and that it is proper for us to

---

**8.** TEX.R.APP. P. 34.5(c)(1).

**9.** *See* TEX.R.APP. P. 34.5(c)(3).

**10.** TEX.R.APP. P. 34.5(e).

**11.** *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998).

consider this copy of the transfer order. We therefore overrule Appellant's ninth issue in her supplemental brief.

■ We now address the merits of Appellant's argument that the trial court lacked jurisdiction because the transfer order was not filed with the district clerk's office and was not among the trial court's papers. In support of her argument, Appellant analogizes her case to *Whytus v. State*, in which the Dallas Court of Appeals reversed the trial court's judgment because the record did not demonstrate that the juvenile court had waived jurisdiction.[12] We, however, conclude that *Whytus* is distinguishable from the case now before us. In *Whytus*, the transcript did not contain the transfer order, nor did the statement of facts indicate that the trial court had the transfer order before it.[13] Because the transfer order was not part of the appellate record, the court of appeals had to rely solely on the State's representations in its brief that the transfer order complied with section 54.02.[14] Conversely, in this case, we have a copy of the transfer order as part of the appellate record. We do not have to speculate about the contents of the transfer order, nor do we have to wonder whether the copy before us is an accurate copy. The parties stipulated, and the trial court found, that the copy of the transfer order contained in the first supplemental clerk's record is accurate and complete.

We have not found any authority to support Appellant's argument that the failure to file the transfer order with the trial court deprives the trial court of jurisdiction. The version of section 54.02 in effect at the time of Appellant's transfer stated, "If the juvenile court waives jurisdiction, it shall state specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court, and shall transfer the child to the appropriate court for criminal proceedings."[15] There is no language in this section indicating that the transfer order must be filed and kept with the papers of the trial court.

The court of criminal appeals addressed this issue in *Ellis v. State*.[16] In *Ellis*, the juvenile court's transfer order was not filed with the trial court at the time of trial, but the trial court later directed the clerk to prepare and file a supplemental transcript containing the transfer order.[17] The appellant argued that (1) the trial court did not have jurisdiction over him because the record did not contain an order indicating that the juvenile court had waived jurisdiction and (2) the court of criminal appeals should not consider the transfer order in the supplemental transcript because the record did not show that the transfer order was filed in the trial court at the time of trial.[18]

The *Ellis* court rejected the appellant's argument, noting,

> Regardless of whether the order of the juvenile court was actually on file with the papers in the case, the record reflects that the juvenile court had waived jurisdiction over appellant and had transferred it to the district court in which all subsequent criminal proceedings were had, and that the district court had such order in its possession and acted on the waiver and transfer and assumed jurisdiction when the examining trial was conducted before in-

---

12. *Whytus v. State*, 624 S.W.2d 290, 291 (Tex. App.—Dallas 1981, no pet.).

13. *See id.*

14. *See id.*

15. *See* Act of May 8, 1987, 70th Leg., R.S., ch. 140, § 2, 1987 Tex. Gen. Laws 309, 309

(amended 1995, 1999) (current version at Tex. Fam.Code Ann. § 54.02(h) (Vernon Supp. 2000)).

16. *Ellis*, 543 S.W.2d at 135.

17. *See id.* at 136–37.

18. *See id.*

dictment was returned.[19]

The court determined that the trial court "properly directed that the supplemental transcript be filed in order that the true facts might be shown and the record speak the truth." [20] ·After considering the transfer order in the supplemental transcript, the court held that the transfer order complied with the provisions of section 54.02 and that the record reflected that the trial court had jurisdiction.[21]

The *Ellis* court did not hold that the transfer order must be filed, but rather stated,

> We strongly advise that to prevent jurisdictional problems from arising the order of the juvenile court waiving jurisdiction and transferring same to the proper court for criminal proceedings ..., be filed with the clerk of the court to which the jurisdiction is transferred prior to or at the time of the examining trial ... and, in the event of an indictment, be kept with the court papers in the case.[22]

The court of criminal appeals had the opportunity to hold that the filing of the transfer order with the trial court is mandatory and jurisdictional, but it did not do so. Likewise, in the more than twenty years since the *Ellis* decision, the legislature has not amended section 54.02 to require the filing of the transfer order. As an intermediate appellate court, we cannot create such a requirement.

Additionally, we note that Appellant signed a written waiver of her right to an examining trial. This waiver states, "Said defendant having already been certified to this Court by the Judge of the Juvenile Court of Tarrant County, Texas, ... agrees that the Tarrant County Grand Jury may hear and consider this case as though said defendant were 17 years of age on the date of the alleged offenses." The trial court's order on Appellant's waiver of an examining trial provides that Appellant, "having been heretofore certified as an adult," executed in writing a waiver of her right to an examining trial, that the cause shall be submitted to the grand jury for consideration for indictment, and that "permanent jurisdiction is accepted by this Court." These documents clearly indicate that the juvenile court waived its jurisdiction over Appellant and that the trial court acted on the transfer order and accepted jurisdiction before the indictments were returned.

■ We hold that the transfer order signed and entered by the juvenile court on September 14, 1995 complies with the requirements of section 54.02. While it is certainly advisable to file the transfer order with the trial court, we conclude that the failure to do so does not deprive the trial court of jurisdiction. We hold that the trial court properly determined that it had jurisdiction over Appellant's cases and that the trial court's judgments and sentences are not void for want of jurisdiction. We therefore overrule Appellant's first issue in her original brief and issues three through eight in her supplemental brief.

## VOLUNTARINESS OF PLEAS

■ In her second issue in her original brief, Appellant argues that she did not knowingly and voluntarily enter her pleas of guilty. Specifically, Appellant contends that "the record shows Appellant pleaded guilty and signed her confessions because she, her counsel, the prosecuting attorney, and the trial judge all were under the mistaken impression the law of parties applied to the use or exhibition of a deadly weapon" and that under "such a mistaken impression, Appellant could not have entered her pleas voluntarily or knowingly." Appellant asserts that because she did not personally use or exhibit a deadly weapon, she would not have pled guilty had she

---

**19.** *Id.* at 137.

**20.** *Id.*

**21.** *See id.* at 136–37.

**22.** *Id.* at 137 n. 2.

known that the trial court could not enter a deadly weapon finding unless the fact finder found that she personally used or exhibited a deadly weapon.

In support of her argument, Appellant cites *In re A.F.* for the proposition that an affirmative finding that a juvenile used or exhibited a deadly weapon during the commission of or during the immediate flight therefrom requires a specific finding by the trier of fact that the defendant personally used or exhibited a deadly weapon.[23] That case, however, was a civil case in which the juvenile was never transferred to criminal district court, but remained in juvenile court and was adjudicated under the provisions of the family code.

■ Conversely, in the case now before us, the juvenile court waived jurisdiction and transferred Appellant to criminal district court. At the time of Appellant's transfer, the family code provided that once the juvenile is transferred for criminal proceedings, the juvenile shall be dealt with as an adult and in accordance with the code of criminal procedure.[24] The code of criminal procedure permits the trial court to make an affirmative deadly weapon finding when it is shown that (1) a deadly weapon was used or exhibited during the commission of a felony offense or during immediate flight therefrom and (2) the defendant used or exhibited the deadly weapon *or* was a party to the offense and knew that a deadly weapon would be used or exhibited.[25] Thus, under the code of criminal procedure, the trial court could enter an affirmative finding of use or exhibition of a deadly weapon even if Appellant did not personally use or exhibit a deadly weapon.

■ A guilty plea is considered voluntary if the defendant was made fully aware of the direct consequences of the plea.[26] The record before us indicates, and Appellant agrees, that she, her counsel, the prosecuting attorney, and the trial judge all believed that under the code of criminal procedure the law of parties applied to the use or exhibition of a deadly weapon. Contrary to Appellant's contention, however, this is not a mistaken belief that renders her pleas involuntary. After reviewing the entire record, we hold that Appellant was made fully aware of the direct consequences of her guilty pleas and that her pleas, therefore, were voluntarily and knowingly entered. We overrule Appellant's second issue in her original brief.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In her third issue in her original brief, Appellant argues that her trial counsel's ineffective assistance renders her pleas involuntary.

#### *Standard of Review*

■ Appellant's claim that counsel's assistance was so defective as to require a reversal has two components. First, Appellant must show that her counsel's performance was deficient; second, she must show the deficient performance prejudiced the defense.[27]

■ The first component is met by showing Appellant's trial counsel made er-

23. *In re A.F.*, 895 S.W.2d 481, 486 (Tex. App.—Austin 1995, no writ).

24. *See* Act of May 8, 1987, 70th Leg., R.S., ch. 140, § 2, 1987 Tex. Gen. Laws 309, 309 (amended 1995, 1999) (current version at TEX. FAM.CODE ANN. § 54.02(h) (Vernon Supp. 2000)).

25. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (Vernon Supp.2000); *see also Bias v. State*, 937 S.W.2d 141, 145 (Tex.App.—Houston [1st Dist.] 1997, no pet.) (holding that affirmative finding is now appropriate in cases where defendant is found guilty of committing offense involving use or exhibition of deadly weapon as a party).

26. *See State v. Jimenez*, 987 S.W.2d 886, 888 (Tex.Crim.App.1999).

27. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

rors so significant he was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution.[28] When a convicted defendant contends that her trial counsel was ineffective, the defendant must show that the attorney's representation fell below an objective standard of reasonableness.[29] The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.[30] "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." [31]

### Discussion

Appellant contends that because the law of parties does not apply to an affirmative finding of use or exhibition of a deadly weapon, her trial counsel rendered ineffective assistance by agreeing to her confession and guilty pleas. As previously stated, Appellant's case is governed by the code of criminal procedure, under which the trial court may make an affirmative deadly weapon finding if the defendant used or exhibited a deadly weapon or if the defendant was a party to the offense and knew that a deadly weapon would be used or exhibited.[32] The record indicates that Appellant's trial counsel was aware of this provision when he agreed to Appellant's confession and guilty pleas. Based on the entire record before us, we hold that Appellant has not demonstrated that her trial counsel's representation fell below an objective standard of· reasonableness and therefore has not met the first prong of *Strickland.* We further hold that Appellant has not demonstrated that her trial counsel's performance renders her pleas

involuntary. We overrule Appellant's third issue in her original brief.

## DEADLY WEAPON FINDINGS

In her fourth issue in her original brief, Appellant argues that the trial court's judgments should be reformed to remove the deadly weapon findings. Appellant again argues that before the trial court could make affirmative findings that she used or exhibited a deadly weapon during the commission of the offenses or during the immediate flight therefrom, the trial court must have found that she personally used or exhibited the deadly weapon. Because the judgments were not rendered independent of this alleged error, Appellant has not waived her right to appeal this issue.[33]

We have already determined that because Appellant was adjudicated in criminal district court under the provisions of the code of criminal procedure, the trial court was authorized to enter affirmative deadly weapon findings if it found that Appellant personally used or exhibited a deadly weapon or that Appellant was a party to the offenses and knew that a deadly weapon would be used or exhibited.[34] We therefore hold that the trial court did not err in entering affirmative deadly weapon findings. We overrule Appellant's fourth issue in her original brief.

## HOLDING

Having overruled all of Appellant's issues on appeal, we affirm the trial court's judgments.

---

28. *See id.*

29. *See id.* at 687–88, 104 S.Ct. at 2064.

30. *See id.* at 688–89, 104 S.Ct. at 2065.

31. *Id.* at 690, 104 S.Ct. at 2066.

32. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2).

33. *See Young v. State,* 8 S.W.3d 656, 666–67 (Tex.Crim.App.2000).

34. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2).