937-15    938-15

PD-0938-15

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

ORIGINAL

EARNEST L. ROSS,
Petitioner,

vs

THE STATE OF TEXAS,
Respondent.

---

Appellate No. 02-14-00210-CR
Tr. Ct. No. F08-1958-B

Appellate No. 02-14-00211-CR
Tr. Ct. No. F08-1959-B

---

PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

SEP 17 2015

Abel Acosta, Clerk

Earnest L. Ross, Pro Se
TDCJ #1728219
Michael Unit
2664 FM 2054
Tennessee Colony, TX 75886

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 11 2015

Abel Acosta, Clerk

Criminal DISTRICT Clerk, Denton County
P.O. Box 2146
Denton, TX 76202-2146

Hon. Steve Burgess
Judge, 158th District Court
Denton County Courts Bldg.
1450 E. McKinney St., 3rd Floor
Denton, TX 76209

Hon. David L. Evans
Regional Presiding Judge
Tim Curry Criminal Justice Center
401 W. Belknap
FORT Worth, TX 76196

Catherine Luft
ASSISTANT Criminal District Attorney
1450 E. McKinney
Denton, TX 76209

Sarah Roland
1409 North Elm Street
DENTON, TX 76201

## TABLE OF CONTENT

INDEX OF AUTHORITIES.. ... ... i

STATEMENT OF CASE... ... ... 1

STATEMENT OF PROCEDURAL HISTORY ... ... ... .. 1

QUESTION FOR REVIEW. ... ... .... ... 1

ARGUMENT ... ... ... ... 1

PRAYER ... ... ... ... 2

## INDEX OF AUTHORITIES

TEX. PENAL CODE § 8.07(b) ... ... ... 1

TEX. FAM. CODE § 54.02 ... ... ... 1

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.

## STATEMENT OF CASE

This case is a criminal matter originating out of Denton. County. Earnes L. Ross was convicted of Organized Criminal Activity and Unlawful Possession of a Firearm by a Felon by a jury. The jury sentenced him to 42 and 20 years, respectively, in the Texas Department OF Criminal Justice-- Institutional Division.

## STATEMENT OF PROCEDURAL HISTORY

On June 11, 2015, the Court of Appeals, Second District of Texas, affirmed petitioner's convictions for EOCA and Unlawful Possession of a Firearm. No motion for rehearing was filed.

## QUESTION FOR REVIEW

Whether a reference to a hearing can substitute as evidence of an Actual Hearing.

## ARGUMENT

Section 8.07(b) of the Penal Code provides:

> "unless the juvenile court waives jurisdiction under Section 54.02, Family Code, and certifies the individual for criminal prosecution or the juvenile court has previously waived jurisdiction under that section and certified the individual for criminal prosecution, a person may not be prosecuted for or convicted of any offense before reaching 17 years of age except an offense described by Subsections (a)(1)-(5)."

Tex. Penal Code § 8.07(b); Tex. FAM. Code Ann. § 54.02 (Vernon2014).

In this case, ther was no evidence that the petitioner

was certified as an adult on cause no. 17176C. The state relied on a document refering to a hearing. This was inadequate for an affirmative finding of a hearing.

PRAYER

For the foregoing reason, petitioner prays that the Court grant review of this petitioner.

Respectfully submitted,

Earnest L. Ross
TDCJ# 1728219
MIChael Unit
2664 FM 2054
Tenn. Colony, TX. 75886

2



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-14-00210-CR**
**NO. 02-14-00211-CR**


EARNEST ROSS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

----------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NOS. F-2008-1958-B, F-2008-1959-B

----------

## MEMORANDUM OPINION[1]

----------

In four points, Earnest Ross contends that in his retrial on punishment, the trial court erroneously (1) admitted a 1981 judgment of conviction, (2) allowed expert testimony on fingerprint ridge analysis, (3) refused to give a jury instruction on age affecting criminal responsibility under section 8.07(b) of the penal code, and (4) denied his motions for mistrial. We affirm.

----

[1]*See* Tex. R. App. P. 47.4.

## Background

A jury convicted appellant in two different trial court cases of one count of engaging in organized criminal activity (EOCA) and one count of unlawful possession of a firearm by a felon. *Ross v. State*, Nos. 02-11-00439-CR, 02-11-00440-CR, 2013 WL 43992, at *1 (Tex. App.—Fort Worth Jan. 4, 2013, pet. ref'd) (mem. op., not designated for publication). The State had alleged that the EOCA offense was enhanced by two prior convictions: a 1981 burglary and a 2001 aggravated assault with a deadly weapon. The State had further alleged that the firearm possession offense was enhanced by the 2001 aggravated assault with a deadly weapon. A jury found appellant guilty of both offenses, found the enhancement paragraphs to be true, and assessed appellant's punishment at fifty-five years' confinement on the EOCA count and twenty years' confinement on the firearm possession offense. *Id.* at *1.

On appeal, this court affirmed both convictions but reversed the sentences for error in the punishment phase of trial. *Id.* at *10. We remanded the cases to the trial court for a new trial on punishment. *Id.* After the new trial, a different jury found the enhancement paragraphs based on the 1981 and 2001 convictions true and assessed appellant's punishment at forty-two years' confinement on the EOCA charge and twenty years' confinement on the firearm possession charge. The trial judge sentenced appellant accordingly. The majority of appellant's complaints in this appeal concern the validity of the judgments used as evidence of the enhancement allegations.

2

## 1981 Burglary Conviction Not Void

In his first point, appellant contends that the trial court abused its discretion by admitting the 1981 judgment convicting him of burglary because he "affirmatively showed a defect in the judgment sufficient to overcome any presumption of regularity that might be accorded the prior judgment."

The evidence showed that appellant was sixteen when the 1981 judgment was rendered; however, he was not convicted by a juvenile court. Sergeant Larry Kish with the criminal investigations division of the Denton County Sheriff's Office testified that he reviewed the file for the 1981 burglary conviction, but he did not find any order in the file certifying appellant to stand trial as an adult. A senior county clerk in the juvenile division of the Denton County Clerk's Office testified that she was not able to locate a juvenile court file for appellant under his name or date of birth. A deputy county clerk in records management testified that the physical file for appellant's 1981 conviction had been checked out and not returned but that the microfilm was available; he also testified that the file was not a juvenile file but a felony case file from the district court. The trial court admitted a printed version of the contents of the file.

Appellant argued at trial that because the clerk's file of his 1981 felony case does not contain a copy of an actual certification or transfer order from the district court, the judgment was defective and therefore could not be used to enhance his EOCA offense. The State argued that references in the file to appellant's being certified to stand trial as an adult were sufficient to show that

3

the judgment was valid. First, the file contains a "Defendant's Motion for Examining Trial Transcript," filed by appellant's attorney in that case, which states, "This Defendant was certified as an adult to stand trial in the above entitled and numbered cause. Subsequent to such certification, an examining trial was held which resulted in this Defendant being bound over to the Denton County Grand Jury." The motion requests a copy of the transcript as "vital to the defense of th[e] case." Additionally, the file contains the time records submitted by appellant's appointed attorney, with the following entries: "Reviewed juvenile certification pro[]ceedings in Clerk's Office," and "Preparation of Motion for Transcript of Certification Hearing." At the bottom of the page is a handwritten note that says, "I Hereby Certify that the Above and foregoing is a True & Accurate account of time spent," signed by the attorney. Finally, the file contains a "Motion For Examining Trial," filed by the district attorney, which recites,

> The defendant was accused on the 23d day of July, 1981, of the felony offense of Burglary of a Habitation and was detained as a juvenile until August 24, 1981, at which time a hearing was held to determine whether or not he should be certified to be tried as an adult. At such hearing in the 158th Judicial District Court, sitting as a juvenile court, certified [appellant] to the 211th Judicial District Court for the purpose of being handled as an adult.

The trial judge stated on the record that he relied on these assertions and notations in the record in determining that appellant had failed to show that he had not been properly certified to stand trial as an adult in the 1981 burglary case.

4

A prior conviction used to enhance a subsequent offense may be collaterally attacked on direct appeal of the subsequent conviction if the prior conviction is void. *Rhodes v. State*, 240 S.W.3d 882, 887 (Tex. Crim. App. 2007). When prior convictions are collaterally attacked, the judgments reflecting those prior convictions are presumed to be regular, and the accused bears the burden of overcoming that presumption by making an affirmative showing that error occurred. *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1985) (op. on reh'g) (holding that mere absence of written jury waiver did not affirmatively show that no jury waiver had ever been executed). The presumption extends to the entire proceeding, including documents filed in the lower court. *Light v. State*, 15 S.W.3d 104, 107 (Tex. Crim. App. 2000).

Appellant relies on two court of criminal appeals opinions that he says hold that the presumption of regularity does not apply to cases involving juvenile transfers and that the absence of a valid certification order in the record renders the conviction void. *See Cordary v. State*, 596 S.W.2d 889, 891 (Tex. Crim. App. [Panel Op.] 1980) (holding that because Cordary was never transferred from the juvenile court to the district court, the district court never obtained subject matter jurisdiction and, thus, district court judgment of conviction was void); *White v. State*, 576 S.W.2d 843, 845 (Tex. Crim. App. 1979) (holding judgments of conviction void because record did not affirmatively show examining trial held). In both of these cases there was affirmative evidence showing that the juvenile courts never transferred jurisdiction to the district courts, rather than an absence

5

of evidence such as the case here. In *Cordary*, the evidence was apparently undisputed that the appellant had told police officers an assumed name, that authorities did not discover her true age at conviction, and that she had never been subject to juvenile court proceedings. 596 S.W.2d at 890. In *White*, the court refused to apply a presumption of regularity in cases originating in the juvenile court with respect to whether the district court held an examining trial; the court also held that in such cases, the record must show affirmatively that such an examining trial was actually held. 576 S.W.2d at 845.

But the court of criminal appeals has also held that the presumption of regularity does apply to a collateral attack of a judgment of conviction for an offense committed as a juvenile when that judgment is used to prove an enhancement allegation. *Johnson v. State*, 725 S.W.2d 245, 247 (Tex. Crim. App. 1987). Thus, in such a case, when "[t]he State establishes a prima facie case of proof of a prior conviction by introducing copies of the judgment and sentence in each case used for enhancement and connecting them with the defendant," the defendant must make an affirmative showing of a defect, such as the absence of a transfer order. *Id.* Additionally, this court has held that the filing of a transfer order with the district court is not jurisdictional so long as a certification order was actually rendered. *Moss v. State*, 13 S.W.3d 877, 885–86 (Tex. App.—Fort Worth 2000, pet. ref'd). In other words, in a collateral attack on a judgment offered for enhancement purposes, to defeat the prima facie proof of a prior judgment and sentence, even from a case originating in juvenile court, a

6

defendant must affirmatively show that the juvenile court never signed a certification or transfer order, not that such an order was not filed with the district court clerk. *See id.*

Appellant contends that the recitations regarding a certification and transfer in the district clerk's file for the 1981 case cannot be relied upon to show that a certification order was actually rendered because they are extrinsic evidence. *See Whytus v. State*, 624 S.W.2d 290, 291 (Tex. App.—Dallas 1981, no pet.) (holding in direct appeal that record must affirmatively show the existence of a certification order and that State's quotation of certification order in its brief could not be relied on because not part of appellate record). But in *Whytus*, a direct appeal rather than a collateral attack, the file contained no certification order, yet the State purported to recite from such an order in its brief. *Id.* It is well-settled that appellate courts cannot consider evidence not in the appellate record on appeal. *E.g., Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004). Here, however, the recitations relied upon by the State are part of the clerk's record and, thus, are not extrinsic evidence.

We addressed and rejected the same argument in appellant's prior appeal. *Ross*, 2013 WL 43992, at *2–3. The only difference in this appeal is that appellant provided evidence that a juvenile court file could not be found and, thus, that the juvenile court had no record of a certification order being signed. However, that the Denton County Clerk's Office cannot find a juvenile court file under appellant's name and date of birth is not necessarily evidence that the

juvenile court did not sign an appropriate order, especially in light of the recitations in the district court file, most by appellant's counsel, indicating that such an order was signed. *Cf. Breazeale*, 683 S.W.2d at 450–51 (noting that "the recitations in the records of the trial court, such as a formal judgment, are binding in the absence of direct proof of their falsity"); *Williams v. State*, 605 S.W.2d 596, 598–99 (Tex. Crim. App. [Panel Op.] 1980) (holding appellant failed to overcome presumption of regularity of judgment when clerk could not find jury waiver document but testified that it was not unusual for files to be "missing, lost, or misplaced"), *overruled in part on other grounds by Woodfox v. State*, 742 S.W.2d 408, 410 (Tex. Crim. App. 1987). We conclude and hold that the trial court did not abuse its discretion by determining that appellant did not show the 1981 conviction is void, and we overrule appellant's first point.

## Fingerprint Ridge Analysis

In his second point, appellant argues, "The trial court abused its discretion in allowing expert testimony on friction ridge analysis when there was uncontroverted evidence that the ACE-V technique is not scientifically reliable and the expert specifically testified that he did not follow the ACE-V technique in this case."

The State introduced fingerprint analysis evidence to link the 1981 conviction to appellant. At appellant's request, the trial court took judicial notice of a 2009 publication by the National Research Council that in part discusses friction ridge fingerprint analysis, entitled, "*Strengthening Forensic Science in the*

8

*United States: A Path Forward.*"  Appellant also requested a hearing under rule of evidence 705 for the trial court to assess the reliability of any expert testimony regarding fingerprint analysis.  Tex. R. Evid. 705.

At the rule 705 hearing, Sergeant Kish testified as follows:

• he had "been trained by Texas Department of Public Safety[,] . . . [the] FBI[,] . . . [and] multiple jurisdictions throughout the [S]tate of Texas";

• he had not had any specific training on fingerprint analysis since 2009 other than "in-house training";

• he did not know the name of the method he used or was trained to use but knew it was an acronym that started with an "A";

• he agreed that each of the letters of the acronym "stand for something very specific in the process" and that it is a problem not to follow the set procedure;

• he "did not know what any of the letters in the acronym stood for in the process";

• he compares fingerprints by "tak[ing] a set of prints . . . from a . . . person . . . on a blank 10-print card . . . then . . . mak[ing] identifiers on that card and . . . compar[ing] them to . . . a pen packet or information received from the Texas Department of Public Safety";

• identifiers are "things such as name, date of birth[,] or . . . any unique identifiers";

9

• there is no "accepted[,] standard[,] or required number of identifying points that have to be used": DPS taught him to use eight, his instructor told him to use eight, the FBI uses more than seven, and other jurisdictions may require an even higher number of identifier matches to make a positive identification;

• Sergeant Kish himself likes to look for "[a] minimum of seven points of identification";

• although Sergeant Kish said at one point that appellant's prints were an "exact match" to the judgments, he later said that may not be a fair word to use; he clarified that he saw "well over a hundred points of identification" between the prints he took from appellant and the prints on the prior judgments;

• in all of his training and reading "there have never been two [prints] to be the same";

• Sergeant Kish took less than five minutes to make his comparison;

• he did not enlarge either the fingerprint card or the judgments;

• he did not use a magnifying glass;

• he did not make any notes;

• although the sheriff's department peer reviews fingerprint analysis to verify findings, no one verified his in this case;

• he agreed that someone else could reach a different conclusion and that fingerprint analysis is inherently subjective and "volatile"; and

• he had not read the 2009 article proffered by the defense.

At the end of the hearing, appellant objected as follows:

10

I'm going to object to him being qualified as an expert in this, specifically under 702. I don't believe that the underlying scientific theory is valid, first of all, under *Kelly*. Second of all, that the technique applying the theory is valid. And then finally, that the technique was actually even properly applied on this occasion in question.

So under *Kelly*, under 702, under 705 and -- and certainly under the due process clauses of the 5th and 14th Amendments and Article 1, Sections 10 and 13 of the Texas Constitution, I'm going to object to him being allowed to testify in front of the jury as to any kind of fingerprint comparison.

The trial court overruled the objection and gave appellant a running objection to Sergeant Kish's testimony regarding that analysis.

At trial, Sergeant Kish testified to the jury that he remembered the acronym ACE-V because he had looked it up on his cell phone. But he also testified that he had not fully followed the ACE-V technique in identifying appellant's fingerprints as those on the judgments because he failed to have his conclusion verified by someone else.

Appellant's complaint is twofold: (1) the ACE-V technique in which Sergeant Kish was trained is not reliable and (2) even if the technique could be considered reliable, Sergeant Kish did not properly apply it in this case. The State contends that ACE-V is a "valid scientific technique under which experts testify regarding fingerprint comparisons in Texas" and that "the jury was free to take Kish's failure to have his work verified into account when it determined whether to believe his testimony; however, the lack of verification did not render his testimony unreliable."

11

In *Kelly v. State*, the court of criminal appeals held that for scientific evidence "to be considered reliable, [it] must satisfy three criteria in any particular case: (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question." 824 S.W.2d 568, 573 (Tex. Crim. App. 1992); *see* Tex. R. Evid. 705.

If the court of criminal appeals has already determined the validity of a particular scientific theory or technique, the party offering expert testimony need not establish *Kelly*'s first two criteria. *Hernandez v. State*, 116 S.W.3d 26, 27 (Tex. Crim. App. 2003). As the El Paso Court of Appeals has recently explained,

> Even to the extent that we would have entertained the relevance and reliability challenges, we would have immediately been confronted with *Russeau v. State*, 171 S.W.3d 871, 883 (Tex. Crim. App. 2005). There, the Texas Court of Criminal Appeals concluded that fingerprint comparison testimony is generally admissible under Tex. R. Evid. 702 "because it is reliable and it assists the trier of fact in its task of determining whether a latent fingerprint is that of a particular person." Thus following *Russeau*, the only remaining inquiry could have been whether the fingerprint technique used by Fernandez was properly applied.

*Dominguez v. State*, No. 08-13-00143-CR, 2015 WL 1137742, at *4 (Tex. App.— El Paso Mar. 11, 2015, no pet.) (not designated for publication) (citing *Russeau v. State*, 171 S.W.3d 871, 883 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926–27 (2006)). The court of criminal appeals based its holding in *Russeau* on both the record in that case and its "own well-established history," even after

12

taking into account cases in which concerns had been expressed about fingerprint comparison analysis. 171 S.W.3d at 883.

Citing the 2009 article, appellant contends that "due to advances in science understanding, it is now known that the ACE-V technique . . . is not reliable or valid." The article does criticize the reliability of the technique as currently utilized in many cases because of its inherent subjectivity, broad criteria that lead to a wide variety of results, and possibility for bias.[2] But it also acknowledges that fingerprint comparison analysis has historically been a valuable tool. It does not advocate doing away with fingerprint analysis or even the ACE-V technique altogether; rather, the report recommends better documentation of each step of ACE-V "or its equivalent" and additional research into various criteria used in fingerprint comparison analysis. In other words, the report does not criticize the concept of fingerprint comparison analysis or conclude that it is invalid in all cases; rather, it criticizes how it has been utilized in some cases.[3] As the Dallas Court of Appeals has explained, "The existence of deficiencies in a particular field, however, does not merit the wholesale exclusion

---

[2]Sergeant Kish agreed "with the basic proposition that there not being a set standard for fingerprint identifiers in the scientific community is what's part of the basis for all of the scrutiny at this point in time."

[3]The article acknowledges that "[t]he committee heard presentations from friction ridge experts who assured it that friction ridge identification works well when a careful examiner works with good-quality latent prints."

of all evidence within that field." *Coronado v. State*, 384 S.W.3d 919, 926–27 (Tex. App.—Dallas 2012, no pet.).

Based on this record and court of criminal appeals precedent, we decline to hold that the trial court abused its discretion by not finding the ACE-V technique inherently unreliable. We will instead review the record to determine whether the trial court abused its discretion by finding that Sergeant Kish properly applied the technique.

We agree with the analysis and reasoning in the Eastland Court of Appeals's opinion in *Forward v. State*, which held that the trial court did not abuse its discretion by determining that an expert's fingerprint testimony was reliable despite the fact that he admitted he did not have his conclusions peer-reviewed in accordance with the verification step of ACE-V. 406 S.W.3d 601, 604–06 (Tex. App.—Eastland 2013, no pet.). Appellant's attempts to distinguish this opinion are unavailing, and we have already addressed most of them. Although the expert in *Forward* specifically testified that the lack of verification "did not in any way invalidate, discredit, or weaken his belief that the fingerprints were a match," that is not the only basis on which the *Forward* court determined that the trial court did not abuse its discretion by admitting the testimony. *Id.* at 604. The court also discussed numerous federal cases in which the courts concluded that peer review of fingerprint analysis was not necessary to its reliability. *Id.* at 605–07. Furthermore, here, regardless of Sergeant Kish's agreement with many of the questions asked of him by the defense, he

14

nevertheless demonstrated his familiarity with fingerprint comparison technique and was adamant about the "well over a hundred points of identification." Furthermore, "[t]he jury was free to take the lack of verification into account when it determined whether to believe [Sergeant Kish's] testimony." *Id.* at 606.

We overrule appellant's second point.

## Section 8.07(b) Instruction

In his third point, appellant complains about the trial court's refusal to give an instruction on age affecting criminal responsibility, which appellant contends was raised by the evidence at trial.

Penal code section 8.07(b) provides,

> Unless the juvenile court waives jurisdiction under Section 54.02, Family Code, and certifies the individual for criminal prosecution or the juvenile court has previously waived jurisdiction under that section and certified the individual for criminal prosecution, a person may not be prosecuted for or convicted of any offense committed before reaching 17 years of age except an offense described by Subsections (a)(1)–(5).

Tex. Penal Code Ann. § 8.07(b) (West Supp. 2014). The trial judge has an absolute sua sponte duty to prepare a jury charge that accurately sets forth the law applicable to the specific offense charged. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). A section 8.07(b) instruction is law applicable to the charged offense if evidence regarding the defendant's actions before turning seventeen is introduced; it is not a defensive issue. *Taylor v. State*, 332 S.W.3d 483, 486–89, 493 (Tex. Crim. App. 2011).

15

In the most recent appeal of this case, we declined to address the merits of this issue after deciding that appellant had not shown that the 1981 judgment was void because in light of our resolution of that and other issues, section 8.07(b) was not the law applicable to the case. *Ross*, 2013 WL 43992, at *3 n.2. Because we likewise hold in this appeal that appellant did not rebut the presumption of regularity of the 1981 judgment, we also hold that section 8.07(b) is not law applicable to the case and, therefore, that the trial court did not err by refusing appellant's request for an 8.07(b) instruction. We overrule appellant's third issue.

## Motions for Mistrial

In his fourth point, appellant contends that the trial court should have granted his motions for a mistrial based on what he alleges is the incurable prejudicial impact of eyewitness identification evidence.

The State introduced evidence of an extraneous offense in which a masked assailant entered a home by force, abducted the couple living there and another person at gunpoint in the couple's car, and jumped out when a police officer stopped the car. The officer and the assailant exchanged gunfire and the assailant escaped. The gunfire and escape occurred near a "heavily wooded" area. That same evening, in the same area, a man walked up to two women at a car wash[4] and asked to borrow a phone. When one of the women refused, he

---

[4]One of the witnesses testified the man pulled himself out of a nearby ditch.

16

threw her to the ground and started hitting her with his fists. When her friend tried to help, the man hit her friend as well. He drove away in the friend's car. The Duncanville police were able to develop appellant as a suspect in the car wash robbery two years later.

One of the victims from the car wash identified appellant from a photo lineup in 2008 two years after the offense; she also made an in-court identification in appellant's initial trial over five years later in 2011. The other woman at the car wash had not been able to identify anyone in a photo lineup or in the first trial; however, in the punishment retrial, when asked whether she had been able to make a photo identification of her assailant, she answered that she had. But she did not say whom she identified. After she so answered, the State stopped its direct examination and asked for the jury to be dismissed. Outside the jury's presence, the witness explained that she thought she had picked someone out but that no one had ever confirmed to her at the time whether she had identified appellant or someone else. The prosecutor told the trial court that he had simply been trying to get the witness to say what she had said in the prior trial, which was that she had not been able to identify anyone from a photo lineup. The State asked for a limiting instruction, but the defense argued that the witness's testimony, coupled with the prosecutor's asking for a dismissal of the jury, necessarily implied to the jury that the witness had identified appellant. The State asked for a limiting instruction, and the trial judge gave one:

17

I will admonish the jury to disregard any identification testimony that this witness has given and to set it aside and give it no weight whatsoever. And this witness has previously testified in [a] prior hearing in contravention of the response just given with regard to identification. And so again, the jury is admonished to set that aside.

The trial judge also polled each jury member; they all answered that they would be able to follow the trial court's instruction.

The trial ended for the day after short testimony from several other witnesses. After a three-day holiday weekend, the trial resumed. Outside the jury's presence, the trial judge stated that he had been thinking about his prior ruling and had decided to instruct the jury not to consider the photo identification of appellant as evidence that he was the person who had committed the robbery at the car wash. The court stated that the two-year gap between the offense and identification—along with the other witness's surprise, changed testimony—"[t]aken in its totality," concerned him. When the jury returned, the trial judge stated,

> THE COURT: And I need to address two things with the jury. One is with regard to a witness last week, a [Ms.] Lopez.
>
> Is that accurate?
>
> [DEFENSE COUNSEL]: That's her name, yes, sir.
>
> THE COURT: Ms. Lopez made an in-court identification and a photo lineup identification. And I'm ordering the jury to disregard those identifications for purposes of establishing who may or may not have committed any of the alleged offenses. You certainly can consider her testimony with regard to did something happen. And if so, what it was. But the jury is to set aside and give no weight whatsoever to the in-court identification or the little past two years photo lineup identification that she made.

18

Testimony then resumed. After a lunch break, appellant's counsel again moved for a mistrial:

> The Rules [of Evidence], I would submit, contemplate [a Rule 104] preliminary hearing outside the presence of the jury specifically for a reason. It's [because] they can't unhear or unsee what they already have seen. It's impossible to withdraw any kind of impression those identifications may have had on jurors at any particular point in trial -- at any point in time. A mistrial is appropriate for highly prejudicial and incurable errors.

> And, Judge, I -- I want to reurge our motion for mistrial. I don't think any kind of limiting instruction can cure what's happened last week. We certainly don't know what these jurors may have been thinking over the weekend. The harm from the in-court ID and the out-of-court ID 733 days after the fact is incurable in that what that does is that injects new harmful material facts in front of the jury that are so inflammatory that any kind of curative instruction, while the goal would be to help it and make it go away and to cure that error, the reality of it is in this kind of situation that can't be done. This is not just like where a prosecutor has made an inflammatory remark in a closing statement or a jury has maybe heard a little something. This is we had a whole preliminary hearing outside of the presence of the jury for a reason.

> And so just at this point I would go ahead and reurge our motion for -- for mistrial based on that.

The trial court again denied the motion.

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). As the court of criminal appeals has explained,

> [T]he question of whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis. A mistrial is the trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile." In effect, the trial court

19

conducts an appellate function: determining whether improper conduct is so harmful that the case must be redone. Of course, the harm analysis is conducted in light of the trial court's curative instruction. Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.

. . . .

. . . We balance three factors: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed).

*Id.* (footnotes omitted).

Regarding the witness who changed her testimony, the record does not show that this change resulted from any misconduct by the State or that the State knew she would change her testimony. Upon hearing the witness's answer, the prosecutor immediately asked for the jury to be excused, which the trial court granted. The trial court gave the jury the above instruction as soon as they returned to the courtroom. Although appellant asserted that excusing the jury harmed him because the jury would necessarily conclude that the witness was going to testify that she had identified appellant, the jury may have actually given less weight to the witness's testimony because of the trial court's subsequent instruction indicating that her testimony was different from her testimony in the prior trial.

With respect to Lopez's identification of appellant, no misconduct was shown. The trial court sua sponte decided to allow the evidence for only a limited purpose after deciding that the difference in time between the offense and the

20

photo identification rendered that identification and the in-court identification unreliable as evidence that appellant was the perpetrator. Appellant contends that there is no way a limiting instruction could cure the prejudice from the jury's having already heard the identification testimony. But during Lopez's testimony, appellant had been able to thoroughly cross-examine her and the officer who showed her the photo lineup about both the length in time between the offense and identification and about the fact that Lopez had told police at the time of the offense that the assailant may have had a gap in his front teeth, which appellant does not have. After having heard such rigorous cross-examination, the jury could have just as reasonably discounted the prior identification as unreliable.

Finally, based on the entire record, we conclude that the likelihood of the same severity of punishment being assessed despite the complained-of matters was high. The jury in appellant's first trial—in which the nonidentifying witness was not potentially discredited—assessed greater punishment on the EOCA offense and the same punishment on the possession of a firearm offense. The evidence showed that appellant had a criminal history involving offenses equally or more serious, including aggravated assault with a deadly weapon and other home invasion robberies.

One of appellant's primary defensive strategies was to show that he should not be punished disproportionately to his codefendants and that his codefendants had an incentive to lie to curry favor with the State for lighter sentences. Additionally, he attempted to show that he was less culpable than Sedric Autrey,

21

who orchestrated the home invasion robberies. To that end, appellant was able to exploit Lopez's identification, particularly her inability to remember whether the assailant had a gap in his teeth, to show that Autrey could have been the assailant instead.

The majority of the State's case focused on two home invasions appellant participated in with his codefendants and the circumstances of the offenses for which appellant had already been found guilty—planning and preparing to execute a sophisticated home invasion with implements for restraining the occupants, a radio communications system, and multiple firearms. Additionally, the State introduced the evidence of the prior felonies used for enhancement purposes; one of those was an aggravated assault with a deadly weapon that was a lesser-included offense of a capital murder charge. Although appellant contends that the evidence of his participation in the other home invasion robberies is tenuous because the primary evidence comes through two of his codefendants, there is corroborating evidence that appellant was involved in those robberies and that appellant was the person who held a gun on occupants during those robberies. The jury was entitled to weigh the credibility of appellant's codefendants in light of the other evidence. Additionally, there was evidence that appellant met one of his codefendants in prison and that he was involved in the home invasion robberies within a year or two of being released from parole.

22

One of appellant's primary arguments at trial and on appeal is that one of his codefendants received a much shorter sentence of seven years' confinement. However, there was evidence that in the home invasion this codefendant participated in, he only drove the other participants to and from the home; he never entered the home and, therefore, did not tie up the occupants or use a weapon to threaten them. Additionally, that codefendant agreed to a plea bargain with the State. We believe this is a distinction the jury was entitled to recognize.

Accordingly, in light of the entire record and state of the evidence, we hold that the trial court did not abuse its discretion by denying the motions for mistrial. We overrule appellant's fourth point.

## Conclusion

Having overruled all four of appellant's points, we affirm the trial court's judgments on punishment.

/s/ Dixon W. Holman

DIXON W. HOLMAN
SENIOR JUSTICE

PANEL: GARDNER and MEIER, JJ.; DIXON W. HOLMAN, (Senior Justice, Retired, Sitting by Assignment).

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 11, 2015

23